**Daniel Lee WEBB, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–98–00407–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 28, 2000.

---

Matthew B. Alford, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

## MAJORITY OPINION
## ON REHEARING
## EN BANC

FROST, Justice.

The court grants rehearing en banc. The panel's opinion of January 27, 2000, is withdrawn, and this opinion is issued in its place.

### I. Introduction

Challenging his conviction for aggravated sexual assault, the appellant, Daniel Lee Webb, asserts the trial court erred in: (1) overruling his motion to dismiss the case for denial of a speedy trial; (2) allowing the introduction of an extraneous offense not falling within any exception under Texas Rule of Evidence 404(b); (3) allowing the introduction of an extraneous offense notwithstanding the State's failure to give reasonable notice of intent to use it at trial; and (4) allowing a material witness for the State to testify notwithstanding her failure to produce written material purportedly used to refresh her recollection. We reverse the appellant's conviction and remand the case for a new trial.

### II. Factual Background

In August 1996, the appellant met Kimberly Baird, the complainant, at a nightclub where she worked as a topless dancer. Baird willingly left the club with the appellant and accompanied him to his home. She was heavily intoxicated at the time, having consumed at least ten shots of liquor and having inhaled two or three lines of cocaine. On the way to the appellant's home, Baird smoked a marijuana cigarette, and once there, she drank beer and inhaled several more lines of cocaine.

Shortly after they arrived at the appellant's home, the appellant requested Baird to perform some dances for him, and she

did so; however, when the appellant began taking photographs of her dancing, Baird became angry and decided to leave. She called a taxicab and sat down on the floor to wait for it to arrive. According to Baird, while she was waiting, the appellant, who was sitting in the recliner behind her, grabbed her and forced her to perform oral sex. Baird attempted to escape the appellant's clutches by kicking out a nearby window. She ultimately succeeded in doing so, but only after being choked and passing out several times.

At trial, the appellant contradicted Baird's version of the events and claimed he never choked or sexually assaulted her. He testified that Baird kicked at him because she was angry with him for not giving her the camera film and, in her rage, missed him and kicked the window instead. The appellant claimed that Baird then lost her balance and fell into the window, and when he tried to help her out of the broken window, she became hysterical. At that point, the appellant claimed, he unlocked the door of his home and told Baird to leave. The appellant denied that he and Baird ever had oral sex or any other sexual relations.

The next day, the police arrested the appellant and charged him with sexual assault. His trial did not begin until almost twenty months later, in April 1998. At trial, the State introduced evidence that the appellant had made a similar attack on another topless dancer who worked at the same nightclub as Baird. The jury convicted the appellant of aggravated sexual assault and sentenced him to thirty years' confinement in the Texas Department of Criminal Justice, Institutional Division.

## III. SPEEDY TRIAL

In his first point of error, the appellant claims the trial court erred in overruling his motion to dismiss the case for denial of a speedy trial.

### A. The *Barker* Test

The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and applies to the states through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 517, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Klopfer v. North Carolina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Additionally, Article I, Section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure guarantee a speedy trial to the accused in a criminal proceeding. TEX. CONST. Art. I, § 10; TEX CODE CRIM.PROC. Art. 1.05 (1977). In determining whether an accused was denied his state right to a speedy trial, we use the same balancing test used to evaluate his federal right to a speedy trial, as set out by the United States Supreme Court in *Barker v. Wingo*. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim.App.1992). The factors we consider are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant resulting from the delay. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999) (citing *Barker*, 407 U.S. at 530–32, 92 S.Ct. 2182). None of these factors is a necessary or sufficient condition to finding a speedy trial violation, but they should be considered in conjunction with other relevant circumstances. *Id.* As the reviewing court, we apply a *de novo* standard of review for the legal components and an abuse of discretion standard for the factual components. *Id.*

### 1. *Length of the Delay*

First, we consider the length of the delay between the accused's arrest and trial. We must find this delay presumptively prejudicial before we inquire into the other three factors. *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. There is, however, no *per se* length of delay that automatically constitutes a violation of the right to a speedy trial. *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985) (en banc). The

delay is measured from the time the defendant is formally accused or arrested until the time of trial. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Most delays of eight months or more are considered presumptively unreasonable and prejudicial. *Id.* at 313, 92 S.Ct. 455. A seventeen-month delay is presumptively unreasonable. *Munoz,* 991 S.W.2d at 822. In this case, the appellant was arrested on August 15, 1996, and the trial did not begin until April 6, 1998. The State essentially concedes that a nearly twenty-month delay is more than sufficient to trigger our consideration of the other three *Barker* factors. Because we conclude the delay in the appellant's trial is presumptively prejudicial, we now address each of the remaining *Barker* factors.

### 2. *Reason for the Delay*

The second factor we consider is the reason for the delay. The State has the burden to prove a reason for the delay. *State v. Flores,* 951 S.W.2d 134, 137 (Tex. App.—Corpus Christi 1997, no pet.); *State v. Empak, Inc.,* 889 S.W.2d 618, 621 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). We consider whether the delay was due to deliberate attempts to hamper the defense, justified circumstances, such as missing witnesses, or more neutral reasons, such as overcrowded court dockets. *Crowder v. State,* 812 S.W.2d 63, 66 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). Delay attributable to the defendant may constitute a waiver of a speedy trial claim under the standard waiver doctrine. *Munoz,* 991 S.W.2d at 822 (citing *Barker,* 407 U.S. at 529, 92 S.Ct. 2182).

Here, the State has shown the delay is due in part to the fact that the appellant could not decide if he would represent himself at trial or allow counsel to defend him. In October 1997, the appellant advised the trial court that he had not been able to get along with his court appointed attorney and that he sought "to represent himself or help in his representation" and that he needed "time to prepare the proper motions and a defense." On several other occasions, the appellant indicated that he planned to retain new counsel. Three days before the initial trial setting in November 1997, the appellant hired a new lawyer to replace his first lawyer. In order to give the new lawyer time to prepare the case for trial, the court reset the trial until April 1998.[1] Additionally, during part of the time (November 1996), the appellant was standing trial in a separate action, which also contributed to the delay of the trial in this case. We find these are valid reasons for the delay. Although the appellant stated his belief that the State was trying to "hamper his defense" and testified that the delays were due to the prosecution, there is no evidence in the record to suggest the State caused any delay in order to hamper the defense. In any event, the appellant's self-serving, conclusory statements, unsupported by facts, are insufficient to rebut the State's showing of valid reasons for the delay.

### 3. *The Appellant's Assertion of his Right to a Speedy Trial*

The third factor we consider is whether the appellant asserted his right to a speedy trial. A criminal defendant must assert this right. *Barker,* 407 U.S. at 528–29, 92 S.Ct. 2182. If he does, the court must give strong evidentiary weight to his assertion. *Crowder,* 812 S.W.2d at 67. This factor is not in dispute in this case. The State acknowledges that the appellant put the trial court on notice that he desired a speedy trial and that a hearing was held on the matter.

---

1. The case was originally reset for March 9, 1998, but an "off docket" reset on February 28, 1998, postponed trial until April 6, 1998. The appellant complains of the "off docket" reset because he did not sign it. However, his counsel did, and because he was represented at the time, his counsel's actions speak for him.

#### 4. *Prejudice to Appellant*

The final *Barker* factor focuses on the prejudice, if any, the appellant has suffered. Although the appellant need not show actual prejudice, he must make a *prima facie* showing of prejudice. *Munoz,* 991 S.W.2d at 826. The burden then shifts to the State to show that prejudice did not exceed that which occurs from the ordinary and inevitable delay. *Id.* (citing *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex. Crim.App.1973)). In determining whether the appellant suffered prejudice, we consider whether the three discernable interests which the speedy trial right was designed to protect were affected. These interests are: (i) prevention of oppressive pretrial incarceration; (ii) minimization of the accused's anxiety and concern; and (iii) limitation of the possibility that the accused's defense will be impaired. *Id.* Interference with the third subfactor is the most serious because the entire fairness of the trial is jeopardized by the inability of the defendant to properly prepare his case. *Id.*

In determining if the pretrial incarceration was oppressive, the dispositive consideration is the effect the incarceration has upon the defendant. *Id.* at 828. Incarceration affects a defendant's livelihood and family life and enforces idleness. *Barker,* 407 U.S. at 532, 92 S.Ct. 2182. In *Munoz,* the Texas Court of Criminal Appeals implicitly found a seventeen-month delay oppressive by holding that incarceration throughout that length of time was dispositive of the effect the incarceration had upon the defendant. 991 S.W.2d at 828. However, in this case, the appellant was convicted of another sexual assault in November 1996, and sentenced to twenty years' confinement as punishment for that crime. Therefore, the appellant would have been incarcerated under the first tried case for the entire twenty months. We do not find that the twenty-month delay in the trial of *this* case had any additional effect upon the appellant. Thus, the appellant's pretrial incarceration was not oppressive.

In arguing that his anxiety and concern were not minimized, the appellant points to the letters he wrote to the trial court, including one in which he claimed the postponement of his trial caused him anxiety and duress. In another letter, the appellant wrote that he was desperate to present his case before he lost contact with his witnesses. Although the State argues there is no *testimony* regarding anxiety and concern, it gives no reason why the letters in the record cannot be construed as showing anxiety and concern beyond that which would result from the ordinary and inevitable delay. Therefore, in the absence of evidence to the contrary, we find that the appellant's anxiety and concern were not minimized.

In determining whether the appellant's defense was impaired, we consider the appellant's testimony concerning the availability of a defense witness, the appellant's neighbor at the time of the offense, who died a mere fifteen days before this case was called to trial.[2] Specifically, we consider the information the appellant claims this witness would have provided to determine if the appellant was prejudiced as a result of the delay. Because prejudice is obvious when witnesses die or disappear during a delay,[3] a defen-

---

2. In his brief, the appellant also claims "there are numerous references to the loss of memory in the record due to the unreasonable delay of almost twenty months...." Arguments to support contentions made must contain cites to the record. TEX.R.APP.P. 38.1(h). The appellant did not provide cites to the record. Additionally, to preserve a point of error, the appellant must object or make a motion. TEX. R.APP.P. 33.1(a). The appellant, however, did not assert memory loss in his motion to dismiss for denial of his constitutional right to a speedy trial or in the hearing on this motion. Therefore, the appellant has waived his contention of prejudice due to memory loss.

3. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. 2182; *Rivera v. State,* 990 S.W.2d 882, 891 (Tex.App.—Austin 1999, pet. ref'd), *cert. de-*

dant need only show that the prospective witness was believed to be material to the case, not that the witness would have testified favorably to the defense. *Phillips v. State*, 650 S.W.2d 396, 402 (Tex.Crim.App. 1983); *Crowder*, 812 S.W.2d at 67. In determining if the witness was believed to be material to the case, a court can consider whether there is any evidence that the defendant attempted to obtain the witness's statement during the delay. *Broussard v. State*, 978 S.W.2d 591, 597 (Tex.App.—Tyler 1997, pet. ref'd); *State v. Kuri*, 846 S.W.2d 459, 467 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). At the speedy trial hearing, the appellant testified that the witness, had he lived, would have corroborated the appellant's version of some of the events on the evening in question. According to the appellant, the witness would have testified that Baird told the witness she kicked out a window and then fell through it, a fact the appellant claims would have corroborated his testimony. Additionally, the appellant testified that the witness knew the layout of the appellant's home and would have corroborated the appellant's testimony that a key is not necessary to get out of the appellant's house, a fact that Baird disputed at trial. Our review of the record indicates that the appellant failed to take any action that would suggest the now deceased witness had material information about this case. It is logical to conclude that the defense would have at least interviewed, if not subpoenaed, a material witness when trial was little more than two weeks away. However, there is nothing in the record to suggest that the appellant attempted to interview the witness, take a sworn statement from him, or arrange for a trial subpoena to secure his attendance at trial. While a showing of actual prejudice is not required, the appellant must come forward with more than his own self-serving and conclusory statement that a witness who died very shortly before trial would have given testimony on a material issue. The appellant's bold assertion, standing alone, is insufficient to demonstrate prejudice. Furthermore, the record suggests that at least part of the evidence claimed to have been lost with the untimely death of the neighbor was available from other sources, i.e., others who had been in the appellant's home could have testified as to its layout and whether it was necessary to have a key to get out of the appellant's house. Considering all of these matters, we cannot conclude that the appellant's defense was impaired; if it was impaired, the impairment was minimal.

We also note that this case is distinguishable from *Phillips*. In *Phillips*, the defendant was unable to talk to a co-defendant through no fault of his own because the co-defendant had died before the defendant learned of the indictment. 650 S.W.2d at 402. The Texas Court of Criminal Appeals reasoned that requiring a showing that unknown testimony would have been favorable to the defense imposes an impossible burden. *Id.* at 402–03. This case, however, is distinguishable because the appellant had over nineteen months after he was indicted to contact the neighbor and prepare to present his testimony at trial, yet he failed to do so.

Keeping in mind that limiting the possibility that the accused's defense will be impaired is the most important subfactor, we do not find that the appellant suffered prejudice as a result of the delay in his trial. His defense was not impaired, and his pretrial incarceration was not oppressive. We find that these two subfactors outweigh any anxiety and concern the appellant may have suffered as a result of the delay in his trial.

### B. Balancing the *Barker* Factors

█ We must now balance the four *Barker* factors to determine if the appellant was denied his right to a speedy trial. While the presumption of an unreasonable delay and the assertion of a right to a

*nied*, 528 U.S. 1168, 120 S.Ct. 1191, 145 L.Ed.2d 1096 (2000).

speedy trial support the appellant's position, the State showed valid reasons for the delay, and the appellant suffered little or no prejudice. Although asserting a right to a speedy trial carries strong evidentiary weight in determining whether the appellant was deprived of the right, the other factors and circumstances weigh heavily against him. Balancing these factors, we find the appellant was not denied his right to a speedy trial. Accordingly, we overrule the first point of error.

## IV. EXTRANEOUS EVIDENCE

In his second point of error, the appellant claims the trial court erred in admitting evidence of an extraneous sexual assault involving Jamie Porter because the State failed to provide reasonable notice of its intent to use it at trial, as mandated by Texas Rule of Evidence 404(b). In his third point of error, the appellant claims the trial court erred by admitting this evidence because the extraneous offense did not fall within any of the exceptions to rule 404(b).

### A. Standard of Review

 In determining whether a trial court erred in admitting evidence, the standard for review is abuse of discretion. *Mozon v. State,* 991 S.W.2d 841, 846–47 (Tex.Crim.App.1999). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Foster v. State,* 909 S.W.2d 86, 88 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd) (citing *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)).

### B. Notice Under Texas Rule of Evidence 404(b)

 The appellant first contends that the trial court erred in admitting Porter's testimony because the State failed to provide reasonable notice of its intent to use her testimony at trial. Rule 404(b), which governs the admissibility of extraneous crimes and other wrongs, provides:

> [E]vidence of other crimes, wrongs, or acts may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, *provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief* such evidence other than that arising in the same transaction.

TEX.R.EVID. 404(b) (emphasis added). The purpose behind the notice provision of this rule is to adequately make known to the defendant the extraneous offenses the State intends to introduce at trial. *Self v. State,* 860 S.W.2d 261, 264 (Tex.App.— Fort Worth 1993, pet. ref'd). The State argues: (1) it was not required to respond to a *pro se* request for notice; (2) it did not receive the appellant's *pro se* request for notice; and (3) the notice provided was reasonable.

#### 1. *Pro Se Request for Notice*

 First, the State argues that the appellant's *pro se* request for notice of extraneous offenses was not sufficient because his counsel never adopted it. In making this argument, the State cites as authority several cases holding that courts are not required to consider *pro se* motions after the defendant is represented by counsel, i.e., a defendant has no constitutional right to hybrid representation. *See Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989); *Ashcraft v. State,* 900 S.W.2d 817, 831 (Tex.App.—Corpus Christi 1995, pet. ref'd); *Busselman v. State,* 713 S.W.2d 711, 714 (Tex.App.— Houston [1st Dist.] 1986, no pet.). The State's reliance on the "hybrid representation" argument is misplaced because it overlooks a critical distinction between a motion and a request for notice. A motion requires a court to take action whereas a request is self-executing and requires no court action. The text of rule 404(b) does

not require a motion or a ruling by the court to trigger the State's obligation to provide notice; all that is required is a "timely request by the accused." Tex. R.Evid. 404(b). Unlike a motion, any request for notice under rule 404(b) the appellant files while representing himself is effective for all purposes and remains in effect even if the appellant subsequently retains counsel. Therefore, we reject the notion that the State is not required to respond to a *pro se* request for notice under rule 404(b) because the accused's counsel did not later adopt it.

█ In its supplemental brief on rehearing, the State argues, for the first time, that the appellant *was* represented by counsel on October 22, 1997, when he filed his request for notice under rule 404(b). The record shows otherwise. On October 6, 1997, the trial court held a *Faretta* hearing[4] in which "[t]he court makes a finding at this time that you have waived your right to representation, voluntarily, intelligently ... the court so finds that you may represent yourself." On November 7, 1997, the appellant's counsel made a formal appearance before the court on the appellant's behalf. The record clearly shows the appellant was not represented by counsel from October 6, 1997, through November 7, 1997, and that he was acting *pro se* at the time he made the rule 404(b) request for notice. Thus, we find the State's argument factually incorrect.

#### 2. *Service of Request for Notice*

Although not raised in its original brief, the State argues on rehearing that "the State was never aware that the appellant had filed his *pro se* notice." The record,

however, indicates that the appellant filed and served a timely request for notice.

█ To be effective, a request under rule 404(b) "should be in writing and served on the prosecution." *Espinosa v. State*, 853 S.W.2d 36, 38 (Tex.Crim.App. 1993). A certificate of service creates a presumption that a document properly sent is received by the addressee. *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex.1994) (finding presumption of receipt where counsel swore in affidavit that designation of experts was mailed and other party failed to bring forward verified proof of non-receipt); *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 809 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (finding presumption of receipt where motion with certificate of service recited service by mail and no offer of proof suggesting non-receipt was made). This presumption may be rebutted by an offer of proof of non-receipt, but absent any such proof, the presumption has the force of a rule of law. *Id.* The appellant's *pro se* request was filed with the trial court and contains a certificate of service stating that a copy was served on the prosecution. Although the State asserts on rehearing that it was not aware of the request, there is no evidence in the record to rebut the presumption that the State received notice. Accordingly, we presume the State received the appellant's request for notice of extraneous evidence under rule 404(b).[5]

#### 3. *Reasonableness of Notice*

Having found the appellant made a timely and proper request for notice under rule 404(b), we now consider whether the State complied with the rule by giving the appellant reasonable notice of its intent to use

---

4. A *Faretta* hearing is a hearing to ensure a criminal defendant's decision to waive counsel is made knowingly and intelligently, as required by the United States Supreme Court in *Faretta v. California* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See Hadnot v. State*, 14 S.W.3d 348 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.).

5. Although the cases cited pertain to notice in civil cases under the Texas Rules of Civil Procedure, we can conceive of no reasonable basis for treating receipt of notice issues differently in criminal cases than in civil cases.

evidence of the extraneous offense involving Jamie Porter.

What constitutes "reasonable notice" under rule 404(b) depends on the facts and circumstances of the case. In *Self*, the appellant requested notice three weeks before trial. 860 S.W.2d at 263. The *Self* court found five days' notice adequate where defense counsel was able to cross-examine the witness about the specifics of the extraneous offense, and the defendant was not surprised by the extraneous offense testimony. *Id.* at 264. The rule requiring advance notice of the State's intent to use evidence of other crimes, wrongs or acts at trial was designed to eliminate the unfair prejudice that can result from the surprise introduction of these matters at trial. Thus, the lack of surprise is a valid and important consideration in assessing the reasonableness of notice. However, notice is not deemed reasonable merely because the defense is not surprised. If lack of surprise were the only consideration, the State could routinely lay behind the log, making last minute disclosures of its intent to use extraneous offenses in those cases where the defendant arguably would not be surprised by the State's intent to use such evidence at trial. Tactics of this sort would undermine the letter as well as the spirit of the rule. A sister court of appeals has taken a similar approach in determining the reasonableness of notice under this rule. In *Hayden v. State*, 13 S.W.3d 69 (Tex.App.—Texarkana 2000, pet. granted), the court did not limit its inquiry to whether the accused was surprised but also focused on whether the State informed the accused of its intent to introduce the extraneous offenses. 13 S.W.3d at 77. *But see Cole v. State*, 987 S.W.2d 893 (Tex.App.—Fort Worth 1998, pet. ref'd)(holding that because the defendant was not surprised by the testimony, notice was sufficient) and *Self*, 860 S.W.2d at 264 (holding that because the defendant was not surprised by the testimony, notice was sufficient).

In determining whether the notice provided was "reasonable" within the meaning of rule 404(b), we consider the notice that is to be expected or required under the particular circumstances of the case. For example, when notice was requested ten months before trial and written notice was given on the Friday afternoon before trial was to begin on the following Monday, the notice was not reasonable. *See Hernandez v. State*, 914 S.W.2d 226, 234–35 (Tex.App.—Waco 1996, no pet.); *see also Neuman v. State*, 951 S.W.2d 538, 540 (Tex.App.—Austin 1997, no pet.) (holding notice given on the morning of trial where rule 404(b) request was made six weeks before was not reasonable). In this case, the appellant requested notice of extraneous offenses *six months* before trial. He received oral notice of the State's intent to use an extraneous offense involving a similar attack on another nightclub dancer on Thursday before trial was to commence on the following Monday. As a result, the appellant had only one business day before trial to prepare for the cross-examination of this important witness and to make any necessary adjustments in his trial strategy.

The State argues in its supplemental brief on rehearing that the complainant in the extraneous offense (Porter) was on its subpoena list[6] and, therefore, the appellant should not have been surprised by the State's intent to present her testimony on an extraneous offense at trial. The State's argument both overlooks and exemplifies the primary purpose of rule 404(b)'s notice provision—to inform the defendant of the State's *intent* to use

---

**6.** After the original opinion issued, the State sought leave to supplement the record to show that Jamie Porter was on the State's subpoena list months before trial. During the panel's consideration of this issue, the State neither raised this matter nor pointed to anything in the record to suggest that it had complied with the request for notice prior to the eve of trial.

extraneous evidence so that the defendant can prepare his defense. *See* TEX.R.EVID. 404(b); *Hayden*, 13 S.W.3d at 77; *Self*, 860 S.W.2d at 264. The Texas Court of Criminal Appeals has made it clear that the burden of compliance with this rule is on the State; *no intent is presumed.* In *Buchanan v. State*, 911 S.W.2d 11 (Tex. Crim.App.1995), the court noted that "[t]he mere presence of an offense report indicating the State's awareness of the existence of such evidence does not indicate an 'intent to introduce' such evidence in its case in chief." 911 S.W.2d at 15. Likewise, merely listing witnesses who *could* give testimony concerning other crimes, wrongs or acts of the defendant does not communicate an intent to use evidence of such matters at trial. A witness on the subpoena list could have evidence of extraneous offenses as well as other types of evidence; thus, the mere fact the witness is subpoenaed to testify does not necessarily support an inference that the witness is being subpoenaed for the purpose of giving evidence of other crimes, wrongs or acts. *See, e.g., Hayden*, 13 S.W.3d at 76–77 (holding the State did not give reasonable notice where it merely opened its file and sent the accused notice of its intent to call witnesses, including witnesses who could have given extraneous testimony on offenses, but the notice did not say on what topic the witnesses would be testifying).

■■■■■ Listing a complainant in an unrelated case on a subpoena list does not supplant the State's obligation to provide reasonable notice under rule 404(b). At most, the subpoena list indicates the identities of witnesses whom the State intends to call to testify at trial. It does not indicate an intention by the State to use extraneous evidence in its case in chief, as required by the plain language of the rule. *See* TEX.R.EVID. 404(b). The defendant is not required to make inferences about the State's intent from a subpoena list or other documents in the file. To the contrary, a defendant is entitled to rely on the State's obligation to respond to a timely request for notice under rule 404(b) as a prerequisite for its presentation of extraneous evidence. The reasonable expectations of a defendant who has properly requested notice and the basic framework of the rule are utterly frustrated when the State fails to timely disclose its intent to use evidence of extraneous offenses. Having requested notice of the State's intent to use extraneous offense evidence more than six months before trial, the appellant was entitled to assume that the State did not intend to use such evidence because the State had not provided the requisite notice by the eve of trial.

■■■■■ Based on this record, we cannot conclude that the State timely communicated its intention to offer extraneous evidence relating to the Porter offense at trial.[7] Considering the appellant had requested notice six months before trial, we do not find that giving notice one business day before trial is to commence is reasonable, particularly given the importance of the extraneous evidence to the case.[8] In the absence of reasonable notice, a trial court's decision to admit evidence of an extraneous offense constitutes an abuse of discretion. We find the trial court erred in allowing the State to offer evidence of the extraneous offense involving Porter

---

7. In footnote 9, the dissent argues the State was not required to give advance notice of its intent to use the extraneous offense because it was offered in rebuttal to a defensive theory. We agree that when the State offers an extraneous offense in rebuttal, advance notice is not required under rule 404(b). However, as explained more fully below, appellant did not raise a defensive theory but merely challenged Baird's credibility and recall. Absent a cognizable defensive theory, which can be logically rebutted by proof of an extraneous offense, the State must comply with the notice provision of rule 404(b).

8. Baird and the appellant told conflicting stories about what transpired at the appellant's home. Without Porter's testimony, the evidence was basically Baird's word against the appellant's word.

without providing the reasonable notice prescribed by rule 404(b).

## C. Admission of Extraneous Offense

 The appellant also argues the trial court erred in allowing the State to introduce Porter's testimony because the attack she described constituted an extraneous offense not falling within any exception under rule 404(b). Although relevant, "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R.EVID. 404(b). However, extraneous offenses may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.; Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (op. on reh'g). The proponent of the extraneous offense evidence may also persuade the court that the evidence is relevant upon a logical inference not anticipated by the rulemakers. *Montgomery,* 810 S.W.2d at 387–88. The Texas Court of Criminal Appeals has held that extraneous evidence is admissible to rebut defensive theories raised by the State's witnesses during cross-examination. *Ransom v. State,* 920 S.W.2d 288, 301 (Tex.Crim.App.1994). However, merely introducing evidence for a purpose other than character conformity, or any of the other enumerated purposes in rule 404(b), does not, by itself, make that evidence admissible. *Rankin v. State,* 974 S.W.2d 707, 709 (Tex.Crim.App.1996). The extraneous offense must also be relevant to a "fact of consequence" in the case. *Id.; Owens v. State,* 827 S.W.2d 911, 914 (Tex. Crim.App.1992).

Porter, another topless dancer who worked at the same nightclub as Baird, testified that the appellant sexually assaulted her in much the same way he was accused of sexually assaulting Baird. In describing the events leading up to her attack, Porter testified that the appellant offered her a ride home from the nightclub after she became intoxicated. According to Porter, the appellant took her to his home and told her she should sleep there for a few hours before going home to her son; after she fell asleep, the appellant got on top of her and began choking her. Porter testified that the appellant then commanded her to have oral and vaginal sex with him. She did.

In *Owens,* the only ultimate fact in dispute was whether the appellant committed the charged offense, i.e., aggravated sexual assault of a child. 827 S.W.2d at 913, 916. There was no dispute as to identity, motive, intent or any of the other exceptions listed in rule 404(b). *Id.* at 916. The jury had the testimony of the appellant and the complainant, appellant's daughter; the State then produced another of the appellant's daughters as a rebuttal witness after the appellant denied the offense occurred. The Court of Criminal Appeals held that evidence of an extraneous offense tending to show the appellant's "system" could not assist the jury in its determination of whether or not the appellant molested the complainant except by showing character conformity in violation of rule 404(b). *Id.*

 Likewise, the ultimate fact in dispute here is whether the appellant committed aggravated sexual assault of Baird. At trial, the court ruled that the extraneous offense evidence involving Porter would be admitted because it was a "signature type" offense that showed "opportunity, plan, maybe motive, scheme...." However, there was no dispute as to identity, motive, intent or any of the other exceptions listed in rule 404(b). The State produced Porter in its case in chief for the stated purpose of challenging the "defensive theory" brought out in the cross examination of Baird that she was mistaken or unsure about the events that occurred because of her high level of intoxication on the evening in question, i.e., to show the offense did not occur. Evidence of an extraneous offense against Porter in April or May of 1995, could not assist the jury in its determination of whether the appellant sexually assaulted Baird in August of 1996, except

by showing character conformity in violation of rule 404(b).[9] In other words, proof of the sexual assault against Porter served no probative function other than to show appellant as a person who commits sexual assaults in general, and, therefore, was more likely to have committed the sexual assault against Baird, an inference rule 404(b) strictly forbids.

On this record, we cannot find that the assault on Porter has any true relevance apart from the appellant's character or his actions in conformity therewith. Rule 404(b) proscribes the admission of such evidence. Because the trial court failed to identify any legitimate reason for allowing evidence of this extraneous offense and our independent review of the record reveals none, we find it was an abuse of discretion for the trial court to admit evidence of it.

### D. Harmless Error Analysis

 We now consider whether the trial court's error is reversible. Constitutional errors are reversible unless the appellate court determines the error did not contribute to the conviction or punishment beyond a reasonable doubt. TEX.R.APP.P. 44.2(a). If the error is not constitutional, we must determine if it affects substantial rights. TEX.R.APP.P. 44.2(b). If the error is neither constitutional nor affects a substantial right, the error is harmless. *See id.* Because no constitutional error is involved when evidence of an extraneous offense is admitted without notice, we look to whether a substantial right was violated. Before we can consider this issue, however, we must determine who has the burden to show that a substantial right was violated. We recently addressed this issue in *McGowen v. State*, 25 S.W.3d 741 (Tex. App.—Houston [14th Dist.] 2000, pet. filed).

 In *McGowen*, we noted the comparable federal harmless error rule. *Id.* at 746. The comments to Texas Rule of Appellate Procedure 44.2(b) specifically state the rule is taken from Federal Rule of Criminal Procedure 52(a) without substantive change,[10] which suggests that we should look to federal cases for guidance. While the Texas Court of Criminal Appeals has yet to specifically adopt this approach, at least two intermediate appellate courts have looked to federal courts for guidance, reasoning that rule 44.2(b) was taken from Federal Rule 52(a). *See Umoja v. State*, 965 S.W.2d 3, 11 (Tex. App.—Fort Worth 1997, no pet.) (op. on reh'g); *Fowler v. State*, 958 S.W.2d 853, 864–66 (Tex.App.—Waco 1997), *aff'd on other grounds*, 991 S.W.2d 258 (Tex.Crim. App.1999) (en banc). The First Court of

---

9. The dissent relies on *Pavlacka v. State*, 892 S.W.2d 897 (Tex.Crim.App.1994), to support the notion that evidence of an extraneous offense is admissible to rehabilitate the credibility of the complainant when the evidence comes from an independent source. In *Pavlacka*, the Texas Court of Criminal Appeals stated, "[a]bsent some independent corroboration, there is no better reason to believe the complainant's account of extraneous misconduct than there is to believe his account of the misconduct for which the accused is on trial." 892 S.W.2d at 903. Latching onto the "independent corroboration" language, the dissent argues Porter's testimony was relevant to rebut appellant's "defensive theory" brought out in the "vigorous cross examination" of Baird. *Pavlacka* mentioned "independent corroboration" to rehabilitate the victim when the victim recounted other offenses committed against him by the accused. *Id.* However, "independent corroboration" in the form of testimony about an extraneous offense involving *another* person does not rehabilitate the victim. It is not reasonable to presume from these comments in *Pavlacka* that the Texas Court of Criminal Appeals meant to overturn its reasoning in *Owens*. Moreover, while vigorous cross examination may open the door to evidence of extraneous offenses, *see Walker v. State*, 588 S.W.2d 920, 923 (Tex.Crim.App.1979), no Texas case has held an extraneous offense admissible absent a defensive issue being raised. Under the dissent's rationale, any cross-examination challenging the complaining witness's credibility or recall would swing open the door to the admission of extraneous offenses. Such a result would totally eviscerate rule 404(b) and the policies underlying the prohibition against the admission of such evidence.

10. TEX.R.APP.P. 44.2 cmt.

Appeals, however, has rejected this view and instead looked to the statute for reviewing error in the jury charge for guidance, reasoning that because the jury charge statute has wording similar to rule 44.2(b), cases construing that statute are instructive. *See Merritt v. State*, 982 S.W.2d 634, 636–37 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed). Given the origin of the rule, we believe the better approach is to look to federal case law for guidance in construing and interpreting rule 44.2(b).

The United States Supreme Court has instructed that courts should not try to put the question of whether a substantial right has been affected in terms of burden of proof. *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Rather, the question each judge should ask is "[d]o I, the judge, think that the error *substantially influenced the jury's decision?* " [11] *Id.* The reviewing court should apply a legal standard—harmlessness—and not enforce a control mechanism for the presentation of evidence at trial. *Id.* The reviewing court is responsible for determining whether error affected the judgment, regardless of whether counsel are helpful in suggesting how the error is harmful. *Id.* at 437, 115 S.Ct. 992 (quoting R. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 26 (1970)). Two other intermediate appellate courts have found that neither party has the burden of proof to show the error violates a substantial right and that the reviewing court should instead look to

the entire record in ascertaining the effect of the error. *See Umoja*, 965 S.W.2d at 12; *Fowler*, 958 S.W.2d at 866. *But see Merritt*, 982 S.W.2d at 637 (finding that the defendant has the burden of proof based on interpretations of the jury charge statute).[12] As we recently held in *McGowen*, neither party has the burden of proof under rule 44.2(b), and for purposes of determining harm, we will look to the record ourselves. 25 S.W.3d at 746.

We now turn to the issue of whether a substantial right was violated in this case. In making this determination, we look for guidance not only to federal authority applying the federal counterpart to rule 44.2(b), but also as to how other Texas courts apply rule 44.2(b).[13]

 A substantial right is violated when the error made the subject of the appellant's complaint had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If the error had no influence or only a slight influence on the verdict, it is harmless. *Johnson v.. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). However, if the reviewing court harbors "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did. *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). The United States Supreme Court has defined

**11.** Emphasis added.

**12.** As we noted in *McGowen*, to the extent *Merritt* based its burden allocation decision on cases involving jury charge error, the Texas Court of Criminal Appeals recently decided that no party bears the burden to prove harm from jury charge error. *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex.Crim.App.2000). Therefore, even were we to follow *Merritt* and analogize to the burden allocation in cases involving jury charge error, we would find that neither party has the burden of proof. Additionally, the language in *Ovalle* suggests that allocating the burden of proof to a party is not appropriate in any harmless error analysis. Specifically, the court found "[n]o party

should have a burden to prove harm from an error.... Burdens and requirements of proving actual facts are appropriate in the law of evidence, but they have little meaning for the harmless-error decision." *Id.*

**13.** *See Carranza v. State*, 980 S.W.2d 653, 657 (Tex.Crim.App.1998) (looking to the federal court's application of Federal Rule of Criminal Procedure 52(a) for guidance regarding the proper standard of review to apply in rule 44.2(b) situations); *King v. State*, 953 S.W.2d 266 (Tex.Crim.App.1997) (looking to federal cases in interpreting when a substantial right is affected).

"grave doubts" to mean "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal,* 513 U.S. at 435, 115 S.Ct. 992. If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. *Id.*

In this case, the trial court's admission of the extraneous offense was erroneous both because the State failed to give reasonable notice under rule 404(b) and because the extraneous offense did not fall within any exception under that rule.

■■■■ We first consider whether the court's admission of the extraneous evidence notwithstanding the State's failure to give the requisite notice under rule 404(b) constitutes an error that substantially influenced the jury's decision. In making this determination, we evaluate the impact on the appellant's ability to present a viable defense and any other effect the untimely notice might have had on the proceedings, i.e., whether it so hampered the appellant's defense that it affected a substantial right. In considering the impact on the appellant's ability to defend, we look to whether he was able to effectively cross-examine the witness through whom the extraneous offense evidence was introduced. Notably, after the trial court ruled that the evidence of the extraneous offense involving Porter would be allowed, the defense never claimed to be surprised by Porter's testimony, requested a continuance, or otherwise sought a delay in the trial. Moreover, there is nothing in the record to indicate the appellant suffered any actual prejudice as a result of a lack of time to prepare for Porter's cross-examination. In fact, defense counsel's cross-examination of Porter outside the presence of the jury indicates he was thoroughly

prepared and not surprised by her testimony.[14] Under these circumstances, we do not harbor grave doubts that the trial court's error in allowing the admission of this extraneous offense *without the requisite notice* from the State did not affect the outcome. However, because we also have determined that the evidence was not admissible for the additional reason that the extraneous offense did not fall within any of the exceptions of rule 404(b), the analysis does not end there. We must also consider the impact of the court's error in admitting this evidence on the jury's verdict.

■■■■ Porter's testimony undoubtedly had more than a slight effect upon the jury's decision. Like Baird, Porter gave a detailed account of her assault, identifying the appellant as the man who attacked her. The similarities in the two incidents are striking. Both victims were topless dancers at the same nightclub. Porter testified that the appellant sexually assaulted her in much the same way he was accused of sexually assaulting Baird. Given that the appellant and Baird were the only witnesses to the event and they related different versions of the facts, Porter's testimony significantly bolstered the State's case. While the jury may well have found Baird's version of events more credible than the appellant's testimony, Porter's damaging testimony almost certainly played a significant role in the appellant's conviction. In light of these facts, we have grave doubts that the trial court's error in allowing evidence of the extraneous offense involving Porter did not affect the outcome. Therefore, we must treat the error as having a substantial and injurious effect upon the jury's verdict. Accordingly, we find the error harmful and reversible.[15]

---

14. Although the State contends that the appellant had the opportunity to hear her testify in another trial, there is nothing in the record of this case to support this assertion.

15. Having found reversible error based on the court's admission of the extraneous offense, we need not address the appellant's remaining issue, which seeks only remand relief.

We reverse the appellant's conviction and remand the case for a new trial.

HUDSON, J., dissents, joined by EDELMAN, J.

HUDSON, Justice, dissenting.

Because the extraneous offense presented here was admissible to both rebut appellant's defensive theory and rehabilitate the complainant's credibility, I respectfully dissent.

I fully recognize that an extraneous offense is "not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R.EVID. 404(b). Here, for example, the State could not have introduced evidence of an extraneous sexual assault merely for the purpose of showing appellant had a propensity to rape. Thus, where a defendant passively denies the commission of an offense, he does not "open the door" to the admission of extraneous offenses. However, in cases where the accused actively defends himself, the defendant often presents a defensive theory that attempts to negate some aspect of the prosecution's evidence. Frequently, a defense is mounted which assaults the victim's credibility. The tactic is lawful and sometimes appropriate, but not without risk, for the State is not powerless to respond.

Evidence of other crimes may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R.EVID. 404(b). The list set forth in Rule 404(b), however, is neither exclusive, nor collectively exhaustive. See Medellin v. State, 960 S.W.2d 904, 908 (Tex.App.— Amarillo 1997, no pet.); Kelly v. State, 828 S.W.2d 162, 164–65 (Tex.App.—Waco 1992, pet. ref'd).

As a general rule, the State is entitled to present in rebuttal any evidence that tends to refute a defensive theory even if such evidence encompasses an extraneous offense. See Davis v. State, 979 S.W.2d 863, 867 (Tex.App.—Beaumont 1998, no pet.).

In fact, probably "the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory." Crank v. State, 761 S.W.2d 328, 341 (Tex.Crim.App.1988), overruled on other grounds, 866 S.W.2d 619, 624 (1993).

Here, the State proved up the extraneous sexual assault before appellant had formally presented his defensive theory. In fact, the State offered the evidence in its case-in-chief. However, during his cross-examination of the complaining witness, appellant's counsel all but testified on behalf of his client. After the complainant admitted that she had been intoxicated at the time of the offense, counsel suggested that intoxication could lead to irrational behavior. Counsel then suggested the complainant was not sexually assaulted, but became irrational and angry when appellant took photographs of her; that she broke his front window by kicking it in a fit of rage; and that he ejected her from his home because she was intoxicated:

Q. [By appellant's counsel:] Okay. There was a struggle that night between you and Danny Webb but it had to do with over [sic] that camera and those pictures?

A. No, sir, it did not.

Q. Okay. As a matter of fact you were upset and mad at Danny Webb when he wouldn't give you the film, weren't you?

A. Is that what he told you? No.

Q. And what happened is as drunk as you were, as mad as you were, you were the one that kicked out that window, correct?

A. I kicked out the window but it wasn't over film. It wasn't over any film.

Q. And what happened then is Danny Webb got upset with you because you were wasted in his house and he kicked you out, right?

A. No, sir.

Relying on *Walker v. State*,[1] for the proposition that a defensive theory can be sufficiently asserted by vigorous cross-examination alone, the State's attorney cited the aforementioned "questions" as one basis for admitting the extraneous offense in her case-in-chief.[2] Appellant's counsel did not vigorously contest the eventual admissibility of the extraneous offense, but only whether it should be admitted during the State's case-in-chief.[3]

Later, appellant did, in fact, testify in his own defense.[4] Appellant said he took several photographs of the complainant while she was wearing only a "G-string." The complainant became aggressively, almost irrationally, hostile and demanded the film from his camera. Appellant testified that he refused to give her the film. The complainant called a taxicab and got dressed. While waiting for the cab, the complainant continued to demand the release of the film. Eventually, the complainant became so upset, she tried to kick appellant. Due to her intoxication, the complainant missed appellant and fell into the window. Appellant said he then escorted her to the door of his residence and threw her out. Thus, whether it was inferentially raised by counsel's cross-examination of the complainant or directly introduced through appellant's testimony, the defensive theory presented to the jury was that the complainant fabricated the allegation of rape on account of, or possibly in retaliation for, appellant's refusal to give her the film from his camera.

While the Court of Criminal Appeals has been cautious, even reluctant, to hold that a charge of fabrication will "open the door" to the introduction of extraneous offenses, I believe the State was entitled to rebut the defensive theory presented here with evidence of a similar extraneous offense.[5] For example, in *Owens v. State*, 827 S.W.2d 911, 913 (Tex.Crim.App.1992), the defendant was prosecuted for sexually molesting his eleven-year-old daughter. The complainant admitted on cross-examination that she was dissatisfied at home and felt her parents were overly strict. Later, when the defendant took the witness stand, he also testified that his daughter was dissatisfied living at home and generally displeased with the material things provided to her. Thus, the defendant raised the defensive theory that the complainant had fabricated her testimony due to her general displeasure with her parents. In rebuttal, the State called the

---

1. 588 S.W.2d 920, 922–23 (Tex.Crim.App. 1979).

2. The State's attorney argued:
 Well, based upon Mr. Cunningham's cross-examination, *State v. Walker* [Walker v. State, 588 S.W.2d 920] is exactly what I'm relying on, that there was extremely vigorous cross-examination of the complainant. As a matter of fact, I think the last five questions that Mr. Cunningham posed to [the complaint] is isn't it true that none of this happened, that you kicked out his window and then walked out of the door because he threw you out of his house?

3. Counsel argued:
 Our position is: It did not happen. So, therefore, there is no issue that this comes in under during their case in chief. I submit to the Court that the only way that this comes in is after Mr. Webb takes the stand and testifies. That is how you ruled at the last trial. You did not allow this testimony to come in during the first trial during their case in chief.

4. Where an extraneous offense is improperly admitted during the State's case-in-chief, the error is rendered harmless if the defendant subsequently presents a defensive theory that authorizes the admission of the same evidence in rebuttal. *See Macias v. State*, 776 S.W.2d 255, 258 (Tex.App.—San Antonio 1989, pet. ref'd) (holding the premature admission of an extraneous offense during the State's case-in-chief, was rendered harmless by the subsequent development of the defensive theory that the complainant's allegation of child abuse had been fabricated).

5. *See Waddell v. State*, 873 S.W.2d 130, 133–39 (Tex.App.—Beaumont 1994, pet. ref'd) (extraneous offense admissible to rebut defense of fabrication in prosecution for indecency with a child); *Self v. State*, 860 S.W.2d 261, 263 (Tex.App.—Fort Worth 1993, pet. ref'd) (holding that where credibility of the complainant is challenged in sexual assault case, proof of similar acts may be admissible).

defendant's eldest daughter who testified that when she was eleven-years-old, she was also molested and sexually assaulted by the defendant. The court held her testimony "was not relevant to any material fact in dispute." *Id.* at 916.[6] If *Owens* represented the last word on this subject by the Court of Criminal Appeals, I would agree with the majority's analysis.

However, two years after *Owens*, the court was presented with a case where the defendant was charged with the sexual assault of a young boy. *See Pavlacka v. State*, 892 S.W.2d 897 (Tex.Crim.App. 1994). Because there was evidence the boy had previously made inconsistent statements regarding the incident, the State elicited testimony from the boy about other sexual assaults that had allegedly been perpetrated against him by the defendant. The State claimed these extraneous offenses were admissible to rebut the defensive theory of fabrication and to rehabilitate the complainant's credibility. The Court of Criminal Appeals held the evidence was not admissible to rebut the defensive theory of fabrication because (1) no evidence was presented to suggest the complainant had been induced by others to fabricate his testimony, and (2) the State did not articulate this theory of admissibility at trial.[7]

Far from holding that extraneous offenses are never admissible to rebut a fabrication theory, the court cited with approval the case of *Self v. State*, 860 S.W.2d 261 (Tex.App.—Fort Worth 1993, pet. ref'd). There, the State was permitted to elicit testimony from a child-complainant regarding other extraneous sexual assaults

to rebut a defensive theory that the complainant had been coaxed by other family members to fabricate the offense.

The court also stated in *Pavlacka* that the extraneous offenses were not admissible to rehabilitate the complainant because absent some *independent* corroboration, there was no better reason to believe the complainant's account of extraneous misconduct than there was to believe his original allegations. In other words, the "mere repetition of allegations from a source of dubious credibility does not render that source any more credible." *Id.* at 903. Again, the court suggested by its analysis that evidence of an extraneous offense from an *independent* source may be admissible to rehabilitate the credibility of the complaining witness.

A defendant, by his plea of not guilty, denies the commission of the offense and puts the State to its proof. He may go further and, in his own defense, affirmatively disparage the complainant's credibility. But while the tactic may be proper, and occasionally successful, it cannot be waged with impunity. In an adversarial system, the State should not be muzzled by excluding relevant evidence that logically tends to rebut the defendant's allegations.

Here, the complainant's credibility was demeaned by suggesting she was (1) extremely intoxicated at the time of the incident, and (2) very hostile toward appellant because he had taken photographs of her. This accusation was properly rebutted by evidence of a similar offense perpetrated against, and offered through the testimony of, an *independent* witness. Moreover, the probative value of the evidence was not

---

6. The court also observed in dicta that the charge failed to limit the jury's consideration of the extraneous offense to rebuttal of the defensive theory and, thus, the evidence was inadmissible. *See Owens*, 827 S.W.2d at 917. However, if testimony is admissible at the time it is tendered into evidence, it cannot be rendered inadmissible by an erroneous jury instruction. In other words, admissible evidence cannot be rendered inadmissible by a subsequent mistake in the charge. If the charge is wanting in some vital aspect of the

law, the mistake constitutes charge error, not an evidentiary error.

7. This portion of the court's analysis seems contrary to the well-established rule that if the trial judge's decision to admit evidence is correct on any theory of law applicable to the case, whether articulated by the proponent or not, it should be sustained. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

substantially outweighed by its prejudicial effect.[8]

Accordingly, I believe the extraneous offense was properly admitted into evidence, and I would affirm the conviction.[9] For these reasons, I respectfully dissent.

EDELMAN, J., joins this dissenting opinion.

---

8. The probative value of the evidence was significant. *See Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App.1985) (holding the probative value of an extraneous offense is determined by its (1) similarity between the extraneous offense and the offense charged; (2) *the temporal proximity of the* two offenses; and (3) the availability of alternative sources of proof). In both instances, the victims were exotic dancers; they became extremely intoxicated on the day they were assaulted; appellant took them from their place of work to his apartment; and, after deadbolting the door, he sexually assaulted them. Both victims were forced to perform deviate sexual intercourse. During both assaults, appellant seemed to derive pleasure from manually choking his victims. In each case, they were allowed to leave after calling a taxicab. Additionally, the offenses occurred within the space of sixteen months. Finally, the record does not disclose the existence of other evidence that would have effectively rebutted appellant's fabrication theory.

Further, the ultimate issue was seriously contested by appellant; the probative value of the extraneous offense was particularly compelling, and the evidence was of a such a nature that a limiting instruction could minimize its prejudicial effect. *See Prieto v. State,* 879 S.W.2d 295, 298 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

9. Because the State cannot be required to accurately predict which defensive theory the accused will advance at trial, notice of other crimes, wrongs, or acts is not required where the extraneous offenses are offered *in rebuttal* to a defensive theory. *See Yohey v. State,* 801 S.W.2d 232, 235 (Tex.App.—San Antonio 1990, pet. ref'd); *Herring v. State,* 752 S.W.2d 169, 172 (Tex.App.—Houston [1st Dist.] ), remanded on other grounds, 758 S.W.2d 283 (Tex.Crim.App.1988).