# NO. 12-22-00161-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***KOBE KEE'JUAN WARTHSAW,*** ***APPELLANT*** | § | ***APPEAL FROM THE 241ST*** |
| ***V.*** | § | ***JUDICIAL DISTRICT COURT*** |
| ***THE STATE OF TEXAS,*** ***APPELLEE*** | § | ***SMITH COUNTY, TEXAS*** |

## *MEMORANDUM OPINION*

Kobe Kee'Juan Warthsaw appeals his conviction for murder. In his sole issue, Appellant challenges the trial court's exclusion of evidence during the guilt-innocence phase regarding his intellectual abilities. We affirm.

### BACKGROUND

Appellant, Trey Barreau, Kevondus Brantley, Robert Robertson, and the victim, Draveon McCullough, decided to rob Johnathan Williams, who Appellant knew to be a drug dealer. The group went to Williams's residence, armed only with a canister of mace,[1] and a struggle ensued when Williams answered the door. Williams fired a shot, which struck McCullough in the chest, fatally wounding him. Appellant, Barreau, Brantley, and Robertson fled.

Sergeant Brandon Lott with the Tyler Police Department responded to the scene. When Lott arrived, Williams told him that he shot someone. Williams told officers that the people who entered his home were trying to rob him. Williams told another officer that he was sprayed with mace. Officers also recovered a canister of mace. Lott saw McCullough lying on his back with his upper body inside the residence, and McCullough appeared to be deceased. McCullough wore

---

[1] Some witnesses identified the canister as pepper spray. The police labeled it as mace when they recovered it from the scene.

a ski mask and had a "[v]ery obvious gunshot wound to the chest." Lott saw marijuana inside the residence and a pistol on the coffee table, and he smelled a strong odor of marijuana.

Upon searching the residence, officers discovered a marijuana grow room and drug paraphernalia. Detective April Molina of the Tyler Police Department obtained security footage from a church directly across the street from Williams's residence, and the footage showed multiple people leaving the scene immediately after the shooting. Molina found evidence inside the home that was consistent with a struggle. Molina interviewed Barreau, Brantley and Robertson, but Appellant refused to consent to an interview. According to Molina, Barreau, Brantley, and Robertson all stated in their interviews that robbing Williams was Appellant's idea. In addition, Barreau's girlfriend testified that the robbery was Appellant's idea.

Robertson testified that he, Appellant, Barreau, and Brantley initially got together on the night in question to sell iPhones and for Appellant to purchase marijuana from Williams, but after they all got into a car, Appellant began talking about "hitting a lick" by robbing Williams. Robertson stated that the group intended "to take weed and whatever money . . . was laying there." According to Robertson, Appellant bought marijuana from Williams and returned to the car, and the group parked the car down the street. Robertson explained that he, McCullough, and Brantley went to the front door of Williams's residence with a can of mace and "rushed" Williams. Robertson testified that robbing Williams was Appellant's idea, but Appellant did not threaten the other members of the group; rather, the group members voluntarily agreed to participate. When asked whether he now realizes "how stupid and dangerous" the plan was, Robertson responded affirmatively. Robertson also testified that he smokes marijuana.

The defense called Lanesia Pennington Wheeler to testify. Wheeler testified that she was Appellant's first grade teacher, and taught Appellant in Head Start. When defense counsel asked Wheeler what kind of student Appellant was, the prosecutor objected and took Wheeler on voir dire. Wheeler stated on voir dire that she did not know anything regarding whether Appellant participated in the murder. Defense counsel stated, "Judge, there has been testimony brought out that [Appellant was] supposed to be the mastermind behind this plan. I'm getting into it about his I.Q.[] because she knows about his I.Q. and things of that nature. That goes to plan. . . ." Counsel approached the bench, and defense counsel reiterated his desire to introduce evidence regarding Appellant's I.Q. and what kind of student he was. The prosecutor stated that such testimony is

2

irrelevant during the guilt-innocence phase but would be appropriate as mitigation evidence during punishment.

Defense counsel made a bill of exception, during which Wheeler explained that Appellant "had a very difficult time in learning and catching on." Wheeler stated that she contacted Appellant's family about putting him into a program because of his intellectual disability. In addition, Wheeler indicated that she kept in touch with Appellant over the years, and she sought to get him into a dropout prevention program because he was homeless at age fourteen. Defense counsel again argued that the jury should hear Wheeler's testimony regarding Appellant's intellectual disability. The trial judge noted that, upon Appellant's motion suggesting incompetency and requesting an examination, a court-appointed clinical and forensic psychologist found Appellant competent to stand trial and provided a report detailing his findings. The trial judge took judicial notice of the report and noted the psychologist's finding that Appellant feigned deficits in an attempt to appear incompetent to stand trial. The trial judge ruled that "based on the testimony that I've heard, [Wheeler's] testimony does not go to an issue that would be before the jury on the guilt or innocence of the defendant."

The defense also called Stella Walker to testify. Walker testified that she lived across the hallway from Appellant's family for about three years, so she had a good deal of contact with Appellant. When defense counsel asked Walker whether she was concerned about Appellant's I.Q., the prosecutor objected that such testimony was not relevant during guilt-innocence, and the trial judge sustained the objection. Defense counsel again made a bill of exception, during which Walker explained that when Appellant was in approximately fourth grade, he read at a first-grade level, and she sometimes helped Appellant with his homework. Walker indicated that she still has concerns about Appellant's intellectual disability. The trial judge ruled that any testimony from Walker about Appellant's intelligence was not relevant to determining whether Appellant is guilty of the charged offense.

The State called Barreau as a rebuttal witness. Barreau testified that he smokes marijuana. According to Barreau, Appellant suggested the robbery to the other members of the group. Barreau explained that he told Brantley, Robertson, and McCullough that Appellant had a plan to rob Williams. Barreau stated that Appellant is the only member of the group who knew Williams, and Appellant provided directions to Williams's residence. When the group arrived at Williams's residence, Appellant bought marijuana, looked inside Williams's home, and told the others that he

3

did not see any guns. When Appellant returned to the car with the marijuana, the group then "smoked a blunt." Barreau testified that when the group knocked on the door and Williams answered, McCullough pepper sprayed him and pushed him back into the house. According to Barreau, Brantley, Robertson, and Appellant then ran into the house. Barreau explained that a struggle ensued when McCullough sprayed Williams, and Barreau heard gunshots while he was on the steps of the house. Barreau testified during cross-examination that Appellant did not force any of the members of the group to participate. Rather, "everybody came up . . . with their own idea to go." Barreau explained that the group did not anticipate Williams having a gun, and he testified, "I wasn't thinking. We weren't thinking at all."

The jury ultimately found Appellant guilty of "murder" and sentenced him to forty years in prison. This proceeding followed.

### EXCLUSION OF EVIDENCE REGARDING INTELLECTUAL ABILITIES

In his sole issue, Appellant argues that the trial court erred by excluding evidence of his intellectual abilities. According to Appellant, the State's theory of culpability was that he acted as "the mastermind behind a botched robbery of a drug dealer at his house." Appellant asserts that "the State opened the door to Appellant's ability to allegedly devise a plan and manipulate others into following it[.]" Appellant contends that his "only defense was that he was incapable of exercising such an overwhelming degree of influence over others that he convinced them they could rob a drug dealer, at his house, in the middle of the night, without getting caught, hurt, or killed."

### Standard of Review and Applicable Law

We review the trial court's decision to exclude evidence for abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An erroneous evidentiary ruling is generally nonconstitutional error and is reviewed as such. *Potier v. State*, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002); *see also* TEX. R. APP. P 44.2(b) (providing that nonconstitutional error must be disregarded unless it affects a substantial right). However, "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier*, 68 S.W.3d at 665. As long as the trial court's ruling was within the zone of reasonable disagreement, we will

not disturb its ruling. *See **Montgomery***, 810 S.W.2d at 391. If the trial court's evidentiary ruling is correct on any theory of law, we will uphold it. ***De La Paz v. State***, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009). Evidence is relevant if it tends to make the existence of any fact of consequence more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Proffered evidence must be relevant to a fact of consequence in the case. ***Webb v. State***, 36 S.W.3d 164, 180 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

## Analysis

Appellant was charged with causing McCullough's death by committing an act clearly dangerous to human life in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2019). The trial court charged the jury regarding the law of parties, which provides that each party to an offense may be charged with commission of the offense, and a person is criminally responsible for an offense committed by his own conduct, the conduct of another for which he is criminally responsible, or both. *Id*. § 7.01(a) (West 2021).

As discussed above, upon Appellant's motion, the trial court retained a forensic psychologist to determine whether Appellant was competent to stand trial. The psychologist filed a report, in which he concluded that Appellant was competent to stand trial. Appellant does not appeal from the trial court's determination that he was competent to stand trial. Appellant's competency to stand trial was addressed before trial and, therefore, was not at issue during the guilt-innocence phase.

The jury heard evidence from several witnesses that it was Appellant's idea to rob a known drug dealer in his home, armed solely with mace. The jury also heard evidence that Appellant and the other members of the group smoked marijuana, both generally and immediately before attempting to rob Williams, and both Robertson and Barreau testified that Appellant did not pressure them into participating in the robbery attempt. Because the proffered evidence from Wheeler and Walker regarding Appellant's intellectual abilities does not tend to make the existence of any fact of consequence more probable or less probable than it would be without the evidence, we conclude that the trial court did not abuse its discretion by excluding the evidence on relevancy grounds during the guilt-innocence phase. *See* TEX. R. EVID. 401; ***Potier***, 68 S.W.3d at 662-63; ***Torres***, 71 S.W.3d at 760; ***Montgomery***, 810 S.W.2d at 391; ***Webb***, 36 S.W.3d at 180. Accordingly, we overrule Appellant's sole issue.

5

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment of conviction.

**BRIAN HOYLE**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00161-CR**

**KOBE KEE'JUAN WARTHSAW,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-0165-21)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*