In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-01261-CR

____________


GEORGE ALEXANDER ERVIN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 338th District Court 

Harris County, Texas

Trial Court Cause No. 837,689





O P I N I O N


 Appellant, George Alexander Ervin, pled guilty to the offense of delivery of
one to four grams of cocaine. After appellant pled true to a prior felony conviction
for sexual abuse of a child, the trial court sentenced appellant to five years in prison. 
 In his sole point of error, appellant contends he was denied a speedy trial. We affirm.


Facts

 The following dates are relevant to appellant's speedy-trial claim:

 July 22, 1999: Appellant allegedly sold 2.9 grams of crack
cocaine to Officer M. Weinel.


 February 28, 2000: Officer Weinel filed a complaint with the
Harris County District Attorney's Office. 


 May 15, 2000: Appellant was indicted. 


 June 26, 2000: Appellant was arrested. 


 July 6, 2000: Appellant filed a motion to set aside the
indictment, alleging a violation of his speedy-trial rights. The case was reset to August 3,
2000. 


 July 14, 2000: Appellant's wife died. 


 August 3, 2000: Agreed reset to August 25, 2000. 


 August 25, 2000: Agreed reset to September 1, 2000.


 September 1, 2000: Trial court heard, and denied appellant's
motion. Agreed setting for jury trial on
October 2, 2000.


 October 2, 2000: Case reset to October 4, 2000.


 October 5, 2000: Case reset to October 13, 2000.


 October 13, 2000: Case reset to October 16, 2000.


 October 16, 2000: Agreed setting for jury trial on November 6,
2000. 


 November 6, 2000: Appellant pled guilty and was sentenced.


Right to a Speedy Trial

 In his sole point of error, appellant contends he was denied his right to a speedy
trial. The right to a speedy trial is guaranteed by the Sixth Amendment of the United
States Constitution and is applicable to the states through the Fourteenth Amendment. 
Barker v. Wingo, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184 (1972). The Texas
Constitution and Code of Criminal Procedure independently guarantee a speedy trial,
but Texas courts look to the federal courts to determine constitutional rights and
apply the Barker test for speedy-trial analysis. Harris v. State, 827 S.W.2d 949, 956
(Tex. Crim. App. 1992); see Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann.
art. 1.05 (Vernon Supp. 2002). The Barker test requires that the following factors be
balanced against each other to determine whether appellant's constitutional right to
a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay;
(3) appellant's assertion of his speedy-trial right; and (4) prejudice to appellant from
the delay. Barker, 407 U.S. at 530, 92 S. Ct. at 2192. As the reviewing court, we
apply an abuse of discretion standard to review factual issues, and a de novo standard
to review legal issues. State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). 




 Length of Delay


 Initially, we note that appellant contends the nearly seven-month delay between
his arrest and his indictment was prejudicial. This argument was presented at the
speedy-trial hearing, and the trial court correctly held that pre-accusation delay is not
relevant to the speedy-trial analysis. See United States v. Marion, 404 U.S. 307, 313,
92 S. Ct. 455, 459 (1982). The Sixth Amendment speedy-trial provision does not
apply until the defendant has been accused because statutes of limitations protect
defendants against pre-accusation delay. Id. A speedy-trial claim will not be heard
until a prima facie unreasonable period of time has passed after accusation. Harris,
827 S.W.2d at 956.

 The State agrees with appellant that the length of delay from accusation until
his trial, over eight months, is presumptively unreasonable. See Harris, 827 S.W.2d
at 956 (noting that courts generally hold delays of eight months or longer
presumptively unreasonable and trigger speedy-trial analysis). Length of delay is
merely the triggering mechanism of the speedy-trial analysis, however. Id. The State
further notes that the speedy-trial motion was filed only 10 days after arrest, and from
appellant's first court appearance until the day he pled guilty, there were six resets
over four months. This presumptively unreasonable delay nevertheless triggers
evaluation under Barker. See Barker, 407 U.S. at 530, 92 S. Ct. at 2192; see also
Munoz, 991 S.W.2d at 821.


 Reason for Delay


 The State bears the burden to justify a presumptively unreasonable delay. See
Phillips v. State, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983). A deliberate attempt
to delay the trial to hamper the defense should weigh heavily against the government. 
Barker, 407 U.S. at 531, 92 S. Ct. at 2192. A negligent delay should weigh less
heavily, but nevertheless should be considered because the ultimate responsibility for
such circumstances must rest with the State rather than the defendant. Id.

 The State points to appellant's filing his motion for speedy trial 10 days after
his arrest, and the multiple resets after the first court appearance, but gives no
explanation for the delay from accusation until the first court appearance. The State
explains the pre-accusation delay by stating that Officer Weinel had appellant's house
under surveillance and was waiting for another opportunity to make a drug buy. As
noted earlier, however, pre-accusation delay is not relevant to the speedy-trial
analysis because of the protections that the statute of limitations already offers. See
Marion, 404 U.S. at 313, 92 S. Ct. at 459. 

 Although the case was first reset because the State was unprepared for trial, 
all remaining resets were agreed to by both the State and appellant. Because the State
was entirely responsible for the initial delay, and offers no other reason for that delay,
this factor weighs slightly against the State.


 Assertion of Speedy Trial Right


 The lack of a timely demand for a speedy trial indicates that a defendant may
not actually want a speedy trial. Harris, 827 S.W.2d at 957 ("[A]ppellant's lack of
a timely demand for a speedy trial indicates strongly that he did not really want a
speedy trial."). Although the State concedes that appellant sought a speedy trial at
his first court appearance, the record reflects appellant moved to have his case set
aside for failure to have a speedy trial. A motion to dismiss notifies the State and the
court of a speedy-trial claim, but a defendant's motivation in asking for a dismissal
rather than a prompt trial is clearly relevant, and may sometimes attenuate the
strength of his claim. Phillips, 650 S.W.2d at 401. 

 Appellant filed his motion to set aside the indictment less than two months
after his indictment. Although appellant testified at the speedy-trial hearing that he
was asserting his speedy-trial rights from the very beginning, the record does not
reflect a request for a speedy trial until the hearing, and the trial court subsequently
granted appellant's request for a speedy trial less than four months after indictment
and less than nine weeks after appellant's arrest. These facts tend to indicate that
appellant was seeking a dismissal, and not a speedy trial, and thus this factor weighs
against appellant.


 Prejudice to Appellant


 The final Barker factor focuses on whether appellant suffered prejudice as a
result of the delay. Barker, 407 U.S. at 532, 92 S .Ct. at 2193. Prejudice is assessed
in light of these rights: (1) to prevent oppressive pretrial incarceration; (2) to
minimize anxiety and concern of the accused; and (3) to limit the possibility that his
defense will be impaired. Id. Although no single factor is necessarily more important
than the other factors, case law indicates that "impairment of the defense" is the "most
serious" factor. Munoz, 991 S.W.2d at 828. 

 Appellant contends he was prejudiced because he was "locked up," and his
wife died while he was incarcerated. Although appellant does not assert any other
specific oppressive pretrial incarceration, or particular anxiety and concern, these two
factors are applicable to appellant, given that he was unable to attend his wife's
funeral, or otherwise attend to personal affairs while incarcerated. See Harris, 827
S.W.2d at 957 ("[T]he first and second interests are, of course, applicable to
appellant, as they would be to any defendant . . ."). 

 Appellant attempted to explain the prejudice he suffered during his
incarceration: 

 Defense Counsel: And the - - by not having a speedy trial, have you
been hurt in any way, prejudiced in any way?


 Appellant: I've been locked up.


 Defense Counsel: But has one close to you - -


 Appellant: My wife has passed away since I've been in here.


 Defense Counsel: She would have been a witness for you, would she
not?


 Appellant: Yes, sir, she would have.


 Defense Counsel: By her not being able to be a witness you think
you've been harmed by that?


 Appellant: Yes, sir, I have. 


The following exchange took place during cross-examination:

 Prosecutor: Your wife, if she had been available as a witness, would
have been able to testify to what?


 Appellant: To my behalf that I have been a hard worker, reliable citizen.


 Prosecutor: She would be a character witness?


 Appellant: Yes, ma'am.


 Prosecutor: But she wasn't present and there is nothing about the facts
of this individual case on her own first hand knowledge?


 Appellant: I don't understand.


 Prosecutor: Was she present when the case that you have been charged
with occurred?


 Appellant: Yes.


 Prosecutor: She was?


 Appellant: We were living together. We were living - - 


 Prosecutor: Was she there at the house when this case that you are
charged with occurred?


 Appellant: I presume she was. There was nothing that I know of that
happened.


 Prosecutor: You recall when the police officer came out and this case
occurred?


 Appellant: No, ma'am.


 Prosecutor: So you are saying that never happened?


 Appellant: No, ma'am.


 Prosecutor: So you can't make a representation to the Court whether or
not she's a material witness to this case?


 Appellant: If she was here she would be a material witness.


 Prosecutor: Can you tell the Judge she was there on July 22 of 99 when
this offense occurred?


 Appellant: Yes, I know she was.


 Prosecutor: And she was present when the officer came - -


 Appellant: If there was an officer there.

 

 Prosecutor: So you're not even saying an officer came?


 Appellant: No, ma'am.


 Prosecutor: Pass the witness.


 If a defendant makes a prima facie showing of prejudice, the State must prove
that the accused suffered no serious prejudice beyond that which ensued from the
ordinary and inevitable delay. Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim.
App. 1973). A claim of prejudice based on the unavailability of witnesses requires
an appellant to show: (1) the witness was unavailable at the time of trial; (2) the
testimony that would have been offered was relevant and material to the defense; and
(3) due diligence was exercised in an attempt to locate the witnesses for trial. Phipps
v. State, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982); Parkerson v. State, 942
S.W.2d 789, 792 (Tex. App.--Fort Worth 1997, no pet.); Meyer v. State, 27 S.W.3d
644, 650 (Tex. App.--Waco 2000, pet. ref'd). Because prejudice is obvious when
witnesses die or disappear during a delay, a defendant need only show that the
prospective witness was believed to be material to the case, not that the witness
would have testified favorably to the defense. Webb v. State, 36 S.W.3d 164, 174-75
(Tex. App.--Houston [14th Dist.] 2000, no pet.) (citing to Phillips, 650 S.W.2d at
402; Crowder v. State, 812 S.W.2d 63, 67 (Tex. App.--Houston [14th Dist.] 1991,
no pet.)). In determining if the witness is believed to be material to the case, a court
can consider whether there is any evidence that the defendant attempted to obtain the
witness's statement during the delay. Webb, 36 S.W.3d at 175 (citing to Broussard
v. State, 978 S.W.2d 591, 597 (Tex. App.--Tyler 1997, pet. ref'd); State v. Kuri, 846
S.W.2d 459, 467 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd)).

 In Webb, the defendant testified that the deceased witness would have
corroborated his testimony, but the record indicated the defendant did not interview
the witness, take a sworn statement, or arrange for subpoena when trial was less than
two weeks away. Webb, 36 S.W.3d at 175. Appellant testified on direct examination
that he had been prejudiced and harmed by his wife's death, but did not testify that
his wife would be a material witness or describe her testimony. Then, on cross-examination, appellant testified, on the one hand, that his wife was present when the
events occurred, and, on the other hand, testified that he "presumed she was" there,
but "[t]here was nothing that I know of that happened." Appellant also testified that,
if his wife "was here[,] she would be a material witness." 

 Appellant did not demonstrate what his wife would have testified to, or why
her testimony was material. Appellant did not show that he believed his wife was a
material witness because he made no showing that he tried to contact her, or obtain
her statement. See Webb, 36 S.W.3d at 175. Appellant has not made a prima facie
showing of prejudice. Even if he had shown prejudice, he has not demonstrated
prejudice beyond that which ensued from the ordinary and inevitable delay. See
Munoz, 991 S.W.2d at 826. This factor weighs against appellant.


 Balancing the Barker Factors


 In balancing the Barker factors in this case, we conclude the State did not
violate appellant's right to a speedy trial. The delay was presumptively excessive,
and the State was initially responsible for the delay, but appellant first filed a motion
to set aside the indictment less than two months after indictment and then agreed to
multiple resets of the case. When appellant requested a speedy trial four months after
indictment, the trial court granted the request. Moreover, appellant has not made a
prima facie showing of prejudice. Appellant did not show how his wife would be a
material witness, and he did not show any attempt to communicate with his wife to
determine what her testimony would have been. He has not demonstrated how he
suffered prejudice beyond that which ensued from incarceration during the ordinary
and inevitable delay. Balancing all these factors, we hold that appellant's speedy-trial
rights were not violated.

Conclusion

 We affirm the judgment of the trial court.




 Tim Taft

 Justice

Panel consists of Chief Justice Schneider, and Justices Taft and Radack.

Publish. Tex. R. App. P. 47.4.