Reversed and Remanded and Opinion filed March 8, 2007








Reversed and Remanded and Opinion filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00865-CR

        14-05-00866-CR

_______________

 

CURTIS LEE BASS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                              
                                 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 1003554 and
1003555

                                                                                                          
                                     

 

 O P I N I
O N








A jury found appellant, Curtis Lee Bass, guilty of two
counts of indecency with a child and sentenced him to ten years= probation for one
count and ten years= imprisonment for the other count.  In
four issues, appellant contends (1) the trial court erred by admitting evidence
of extraneous offenses in violation of the Texas Rules of Evidence and due
process, (2) the evidence is legally and factually insufficient to support the
conviction, (3) the trial court erred by excluding testimony that the
complainant had falsely accused another man of sexual assault, and (4) the
trial court erred by excluding evidence that one of the extraneous offenses at
issue was no-billed by a grand jury. 

I.  Background 

When complainant (A S.D.@) was twenty-six
years old, she accused appellant of subjecting her to indecent sexual contact. 
S.D. was sixteen-years old when the two incidents allegedly occurred.  At the
time of the incidents, appellant served as pastor to the church S.D. attended. 
S.D. also attended school with appellant=s sons.

At trial, S.D. testified that both incidents occurred in
1994.  First, on February 23, 1994, after school, appellant asked her to come
by the church that day to help him with some paperwork.  After they entered his
office, he closed the door.  He then massaged her shoulders, placed his hands
on her hips, touched her breasts over her undershirt, touched her breasts under
her undershirt, kissed her, and touched her vaginal area. 

The second incident occurred on June 7, 1994, when S.D.
went to the church  to tell appellant to leave her alone.  When she arrived,
appellant was at the church entrance.  He repeatedly invited S.D. into the
church.  However, she did not enter and told him that she had to leave.  He then
pulled her toward him and kissed her while touching her breasts, face, arms,
and shoulders.   








During fall  1994, S.D. told classmate, Crystal Wheeler,
about the incidents.  Wheeler repeated the allegations to her parents, who then
informed school administrators.  On November 7, 1994, S.D. met with the school
principal, administrator, and secretary.   S.D. testified the principal asked
her in a sarcastic manner what appellant did to her, Asmirking and laughing@ after S.D.
spoke.  Afterwards, they escorted S.D. to another school building and told her
to wait in an empty classroom.  By the time the administrators retrieved S.D.
from the classroom, school had been dismissed and her grandfather was waiting
to pick her up.  However, the administrators did not allow S.D. to speak to her
grandfather.  They led her back to the administration office where appellant
was waiting.  While the  administrators  asked S.D. to say what happened,
appellant sat in the room smirking, tapping his foot, and crossing his legs. 
During this meeting, appellant asked S.D. if there was a window in his office. 
She said, Ano.@  Appellant then told her there was a
window in his office.  The  administrators told S.D. they thought she was
lying.  

On May 26, 1995, as S.D. walked to her friend=s house, appellant
drove by and stopped next to her.  He told her that Ahe wanted to put
it all behind us,@ A he wanted me to
forgive him,@ A he was sorry,@ and A he did not mean
to lie.@  S.D. further
explained  Adid not mean to lie@ referred to the
confrontation in the school administration office.  

During August 2004, S.D. reported the two episodes to the
police.  She also produced a personal journal that had relevant entries made
during the time period  in consideration. 

II.  Admission of Extraneous Offenses 

In his first issue, appellant contends the trial court
erred by admitting evidence of  two extraneous offenses during the State=s case-in-chief in
violation of Texas Rule of Evidence 404(b) and appellant=s  due process 
rights.  Appellant
contends the extraneous offenses were inadmissable  under  Rule 404(b) because
they were offered solely to establish character conformity.  We agree.         

A.      Rule of
Evidence 404(b)








Pursuant to Rule 404(b), evidence of extraneous offenses is
not admissible during the guilt-innocence phase of a trial to prove a defendant
acted in conformity with his bad character.  Tex.
R. Evid. 404(b).  However, extraneous-offense evidence may be Aadmissible for
other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident@ when it has
relevance beyond character conformity.  Id; 
Moses v. State,
105 S.W.3d  622, 626
(Tex Crim. App. 1991).  Rebuttal of a defensive theory is also one of the
permissible purposes for which  evidence may be admitted under Rule 404(b).  Moses,
105 S.W.3d at 626.  AProbably the most common situation which
gives rise to the admission of extraneous offenses is in rebuttal of a
defensive theory.@ Crank v. State, 761 S.W.2d 328,
341 (Tex. Crim. App. 1988) ) overruled on other grounds by Alford v. State,
866 S.W.2d 619 (Tex. Crim. App. 1993)); see also Powell v. State, 63
S.W.3d 435, 438 (Tex. Crim. App. 2001).   When determining whether evidence of
extraneous offenses is admissible to rebut defensive theories, a trial court
may consider a defensive theory raised in an opening statement.  See Powell, 63 S.W.3d at  439  (citing United
States v. Bari, 750 F.2d 1169, 1180 (2d Cir. 1984); United States v.
Price, 617 F.2d 455, 459B60 (7th Cir. 1979); United States v.
Olsen, 589 F.2d 351, 352 (8th Cir. 1978)). Extraneous offense evidence is
admissible to rebut defensive theories raised by the State=s witnesses during
cross-examination.  Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim.
App. 1994).  However, merely introducing evidence for a purpose other than character conformity, or
any of the other enumerated purposes in Rule 404(b), does not render that
evidence admissible.  Rankin v. State, 974 S.W.2d 707, 709 (Tex. Crim.
App. 1996) (en banc).  The extraneous offense must also be relevant to a Afact of consequence@ in the case.  Id. 

A trial court=s decision to
admit extraneous-offense evidence is reviewed for abuse of discretion.  Moses
v. State, 105 S.W.3d at 627.  As long as the trial court=s ruling was
within the zone of reasonable disagreement, we must affirm. Id.  (citing
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).  Whether
extraneous-offense evidence has relevance apart from character conformity, as
required by Rule 404(b), is a question for the trial court.  Id.  We owe
no less deference to the trial judge in making this decision than any other
relevancy determination.  Id. 

 

 

 








B.      Extraneous
Offense Testimony 

Before trial, the court granted appellant=s motion in limine
objecting to any evidence of extraneous offenses.  During trial, out of the
presence of the jury, the State informed the court regarding the substance of
proposed extraneous-offense testimony and advised that the testimony was
proffered for the purpose of rebutting appellant=s claims regarding
S.D.=s credibility. The
State also noted that the extraneous offenses took place in the same church. 
The trial judge permitted the extraneous-offense testimony, concluding that the
probative value outweighed any unfair prejudicial effect.  The State then
introduced testimony regarding incidents that involved appellant and two other
children,  J.P. and R.C.[1]


First, Richard Parmer, a former member of appellant=s church,
testified about an incident involving appellant and his daughter, J.P.  The
incident occurred when she was five-years old.  Parmer explained that he was
helping clean at the church when he opened the door to  appellant=s office and found
his daughter sitting in appellant=s lap.  J.P.=s dress was above
her waist and appellant=s hands were on her.  After Parmer entered
the office, appellant appeared surprised and said that J.P=s dress had ridden
up, and he was helping her straighten it.

R.C. then testified that on April 1, 2002, when she was
eleven-years old, she was helping clean at the church with her sister. 
Appellant told her to go inside with him to get some cleaning supplies.  After
she entered appellant=s office, he touched her between her legs,
kissed her on the lips, and touched her breasts.  He stopped when the church
front door opened. Afterwards, they retrieved the cleaning supplies. Appellant
instructed R.C. not to tell anyone. However, R.C. went outside and told her sister what had
happened.  However, R.C. told  her mother and sister about the incident that
same day.    

 








C.      Analysis     

Appellant argues the extraneous offenses were inadmissable
under Texas Rule of Evidence 404(b) because they were offered solely to
establish character conformity. Specifically, appellant contends  extraneous-offenses are not
admissible to rebut a fabrication defense and cites our decision in Webb v.
State, 36 S.W.3d 164, 180B81 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (en banc).  We agree
with appellant.

In Webb,
the fact issue in dispute was whether the defendant committed aggravated sexual
assault of the complainant, a topless dancer. Id.  at 180.  At trial,
the State presented testimony from another topless dancer, who had also been
sexually assaulted by the defendant in a similar manner.  Id.   The
trial court ruled extraneousSoffense evidence was admissible because it was a Asignature type@ offense that showed A>opportunity, plan, maybe motive,
scheme . . . .=@ Id.   However, we  noted there was no dispute as to
identity, motive, intent or any of the other Rule 404(b) exceptions.  Id.  The
State contended the extraneousS offense evidence was offered for the purpose of challenging
a defensive theory raised  during cross-examination of the complainant that she
was mistaken or unsure about the events due to her level of intoxication. Id. 
However, we explained that evidence of an extraneous offense against the
other topless dancer Acould not assist the jury in its determination of whether the
appellant sexually assaulted [the complainant] except by showing character
conformity in violation of rule 404(b).@  Id. at 180B81.  Otherwise, any time a
cross-examination challenged the complainant=s credibility or recall, extraneous
offenses would always be allowed inCtotally eviscerating Rule 404(b) and
the policies underlying the prohibition against the admission of such
evidence.  Id.  at 181 n.9.








Likewise,
the ultimate fact in dispute in this case is whether appellant committed
indecency with S.D.  Appellant asserted fabrication as a defense throughout the
trial.  During opening statements, appellant challenged S.D.=s credibility by referring to S.D.=s accusations as Aso bizarre, it is so ridiculous, it
is not worthy of belief,@ Apure fabrication,@ and Aso contrary to [appellant=s] character, not worthy of belief.@  Appellant also
questioned S.D.=s credibility on cross-examination. 
During the  hearing outside the presence of the jury, the State argued that the
purpose of the extraneous-offense witnesses was to rebut the claims appellant
had made relative to S.D.=s credibility.  However, as we also
explained in Webb, evidence of appellant=s extraneous
offenses with J.P. and R.C. could not assist the jury in its determination of
whether the appellant committed indecency with S.D., except by showing
character conformity in violation of Rule 404(b).  See Webb, 36 S.W.3d
at 180B81.  

The State contends Webb=s precedential
value is questionable because it was decided before three recent Court of
Criminal Appeals cases: Moses v. State, 105 S.W.3d 622 (Tex. Crim. App.
2003); Wheeler v. State, 67 S.W.3d 879 (Tex. Crim. App. 2002); and  Powell
v. State, 63 S.W.3d 435 (Tex. Crim. App. 2001).   The State argues these
holdings make clear that extraneous offenses are admissible to rebut a
fabrication defensive theory.  We disagree with the State=s interpretation
of these three cases. 








First, the State directs us to Wheeler v. State.  In
Wheeler, a child sexual assault case, the appellant asserted two
defensive theories allowing extraneous offenses on rebuttal.  67 S.W.3d
at 887.  First, the defendant asserted a lack-of-opportunity defensive theory. Id.
Based on this defensive theory, the court found the extraneous offenses
relevant because  the prior offense occurred with family members in the
immediate vicinity.  Id. Second, the defendant asserted a Aframe-up@ theory,
contending he was the victim of a conspiracy motivated by greed.  Id.  The
court found the extraneous offenses admissible to rebut the Aframe-up@ theory by showing
the defendant=s  prior misconduct (which was very similar to the
charged conduct) in circumstances involving neither money nor revenge as
possible motives.  Id.  In support, the court explained extraneous
offenses are admissible to rebut a Aframe-up@ defensive theory
in a child sexual assault case, as long as the extraneous misconduct is at
least similar to the charged offense and an instance where the Aframe-up@ motive does not
apply.  Id. at 887 n.22 (citing Boutwell v. State, 719 S.W.2d
164, 179 (Tex. Crim. App. 1985)).  

In this case where the State asks us to apply Wheeler, the
State confuses a Aframe-up@ defensive theory
with a fabrication defensive theory.  A frame-up theory suggests that one is
the victim of a conspiracy.  Id. at 887.  Although a frame-up theory may
include an implication of fabrication, it is not the same as a fabrication
defense theory, in which the defendant contends the allegations are entirely
made up.  The Wheeler court did not hold that extraneous offenses are
admissible to rebut a fabrication defensive theory, as the State contends. 
Further, we find no evidence in the record that appellant asserted a Aframe-up@ defensive theory
in this case.  

The State also suggests that the decision in Moses v.
State stands for admission of extraneous offenses to rebut a fabrication
defensive theory.    We disagree.   Moses addressed the admission of
extraneous offenses to rebut a retaliation defensive theory.  105 S.W.3d at
627.  In Moses, the defendant, a tow-truck driver, was found guilty of
bribery for offering to buy a cell phone for a police officer if the officer
would use the phone to call the defendant before sending out a general
broadcast over the radio to all tow-truck drivers.  Id. at 624. 
Although charges were initially not filed against the defendant, they were
later filed against the defendant after his wife, who worked at the police
station at the time, complained about other police officers violating the
tow-truck policy.  Id. at 625.  At trial, the defendant raised had two
retaliation defense theories.  Id. at 627.  First, the defendant
contended the charges were made up in retaliation for his wife=s complaint.  Id. 
Second, the defendant contended the charge was retaliatory based on timing
because no charges were filed against appellant before his wife accused others
of mishandling the tow-truck call procedure. Id.  The court held the
trial court did not abuse its discretion in admitting extraneous offenses to
rebut the retaliation defenses.  Id. 








However, a retaliation defensive theory is not the same as
a fabrication defensive theory.  Under a retaliation defensive theory, the
defendant  asserts that a party did something in retaliation for an action. 
Although a retaliation theory may include an implication of fabrication, it is
not the same as a fabrication theory.  Moreover, we find no evidence in the
record that appellant asserted a retaliation defensive theory in this case.           

The State also suggests the holding in Powell v. State
allows the admission of extraneous offenses to rebut a fabrication defensive
theory.  In that child indecency case, the defendant asserted a
lack-of-opportunity defensive theory in both his opening statement and during
cross-examination of the complainant.  Powell, 63 S.W.3d at 439.  The
court held the trial court properly allowed evidence of extraneous offenses to
rebut the lack of opportunity defensive theory.  Id. at 438.  The Powell
court did not address a fabrication defensive theory as the State suggests.  

In addition, the State contends the extraneous-offense
testimony by R.C. and Richard Parmer rebutted appellant=s subsequent
testimony that he was never alone in his office with little girls.  However,
appellant made this statement during cross-examination.  As a general rule, the
defensive theory that the State wishes to rebut through the use of extraneous-
offense evidence must be elicited on direct examination by the defense and may
not be elicited by Aprompting or maneuvering@ by the State.  Wheeler,
67 S.W.3d at 885.  It is well-established that the State Amay not rely on
its own questioning on cross-examination to contradict the defendant and get in
evidence of collateral matters and [extraneous offenses] which would otherwise
be inadmissible.@ Shipman v.  State, 604 S.W.2d 182, 185 (Tex. Crim.
App. 1980). Because the statement was not elicited on direct examination by the
defense but was instead elicited by the State on cross examination, it is not a
defensive theory that the State may  rebut through evidences of extraneous
offenses.   See Wheeler, 67 S.W.3d at 885.  








In contrast, the Court of Criminal Appeals held in Daggett
v. State, a child sexual assault case, the defendant opened the door to
extraneous-offense evidence that had already been entered during the State=s case-in-chief
when the defendant stated during his direct examination, A>I have never done
anything of the sort with a 16 year old girl period.=@ 187 S.W.3d at
450.  The court held that the subsequent denials cured any possible harm caused
by the admission of the extraneous offense evidence.  Id.   

Finally, in reviewing this record, we cannot conclude that
the extraneous-offenses had relevance under any of the Aother purposes@ outlined in Rule
404(b), apart from proving appellant=s character or his
actions in conformity therewith.  Rule 404(b) proscribes admission of such
evidence.  Because the State did not identify any legitimate reason for
allowing evidence of the extraneous offenses and our independent review of the
record reveals none, we hold the trial court abused its discretion by admitting
extraneous-offense evidence. 

D.      Harm Analysis 








Having found that the trial court committed error, we must
determine whether the trial court=s error is
reversible.  A non-constitutional error that does not affect substantial rights
must be disregarded.  Tex. R. App. P. 44.2(b). 
The erroneous admission of an extraneous offense is non-constitutional error.  Johnson
v. State, 84 S.W.3d 726, 729 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d).  Substantial rights are not affected
by the erroneous admission of evidence Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  If the reviewing court
has Agrave doubts@ that an error did
not affect the outcome, that court must treat the error as if it did. Webb,
36 S.W.3d at 183.  If the reviewing court is unsure whether the error affected
the outcome, the court should treat the error as harmfulChaving a
substantial and injurious effect or influence in determining the jury=s verdict.  Id.
(citing O=Neal v. McAninch, 513 U.S. 432,
435 (1995)).  

 In conducting the harm analysis, an appellate court should
consider everything in the record, including any testimony or physical evidence
admitted for the jury=s consideration, the trial court=s instructions to
the jury, the State=s theory, any defensive theories, closing
arguments, and even voir dire if material to the appellant=s claim.  Motilla,
78 S.W.3d at 355S56;  Morales v. State, 32 S.W.3d
862, 867 (Tex. Crim. App. 2000).  In assessing harm, the factors to be
considered are the nature of the evidence supporting the verdict, the character
of the alleged error, and how the evidence might be considered in connection
with the other evidence in the case.  Motilla, 78 S.W.3d at 356; Morales,
32 S.W.3d at 867. The weight of the evidence of appellant=s guilt is also
relevant.  Motilla, 78 S. W. 3d at 359B60.








R.C.=s and Richard Parmer=s testimony
undoubtedly had more than a slight effect upon the jury=s decision. 
Because appellant raised a fabrication defensive theory, the question here was
whether appellant committed indecency with S.D.  S.D. was the only person who
could describe the incidents because the alleged conduct  occurred when she was
alone with  appellant.  Consequently, the striking similarities between the
incidents alleged by S.D. and the two extraneousSoffenses are
important because the jury may have considered S.D.=s testimony
together with the two very similar extraneous offenses.  Considering the
similarities between the extraneousSoffenses and this
case, we note that both extraneous offenses and the first incident described by
S. D. occurred when appellant was alone with a girl in  his church office.  The
manner of the touching of R.C. and S.D. was very similarCincluding kissing,
touching between the legs, and touching the breasts.  Although  J.P. was
sitting in appellant=s lap when the touching occurred, the
difference between that act and the incidents involving R.C. and S.D. would most
likely have been due to the age difference between the girls.  J.P. was
five-years old at the time of the touching, while R.C. was eleven and S.D. was
sixteen.   In light of these facts, we have grave doubts that the trial court=s error in
admitting evidence of extraneous offenses involving two other girls did not
affect the outcome. Therefore, we must treat the error as having a substantial
and injurious effect upon the jury=s verdict.  We
find the error harmful.[2] 
Appellant=s first issue is sustained.  

III.  Legal Sufficiency 

In appellant=s second issue, he
complains that the evidence is legally insufficient to support a conviction for
indecency with a child.  We address this claim even though we have sustained
appellant=s first issue because A>[a]n appellate
court must always address challenges to the [legal] sufficiency of the
evidence.=@  See Rankin v. State, 46 S.W.3d
899, 901 (Tex. Crim. App. 2001) (quoting McFarland v. State, 930 S.W.2d
99, 100  (Tex. Crim. App. 1996)).[3] 
In conducting a legal sufficiency review of a jury=s finding of
guilt, we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We do not ask whether
we believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318S19 (1979). 
Rather, we determine only whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Cardenas v.
State, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000).  In our review, we accord
great deference A>to the
responsibility of the trier of fact [fairly to] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@ Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson,
443 U.S. at 319).    








An individual commits indecency with a child if the person
engages in sexual contact with a child younger than seventeen years old and is
not the person=s spouse or causes the child to engage in sexual
contact.  Tex. Penal Code Ann. ' 21.11(a)(1)
(Vernon 2003).  ASexual contact@ means Aany touch by a
person, including touching through clothing, of the anus, breast, or any part
of the genitals of a child; or (2) any touching of any part of the body of a
child, including touching through clothing, with the anus, breast, or any part
of the genitals of a person@ if committed with the intent to arouse or
gratify the sexual desire of any person.  Tex.
Penal Code Ann. ' 21.11(c) (Vernon 2003).   

S.D. testified that appellant kissed her and touched her breasts
and vaginal area.  Further, both her grandfather, Thomas Dishman,  and her
childhood friend, Charlotte Nava, testified that S.D. had told them appellant
had touched her.  In addition, appellant offered S.D.=s entire
five-hundred-fifteen page journal written between August 27, 1992 and June 13,
1996, which actually contained evidence supporting the allegations.  In the
journal, she wrote that appellant Asexually assaulted@ her and referred
to the first incident as the Abig secret@ throughout the
journal.   Further, she wrote that she was scared of appellant and wanted him
to leave her alone.  She described occasions when she saw him.  She wrote about
appellant=s driving by her house, his  talking to her when he
saw her, the second incident, and  the confrontation at school by the school
administration and appellant. In describing the confrontation, she specified
that she pointed to her chest when asked where he had touched her.  

From these facts, the jury could have reasonably concluded
that appellant engaged in sexual contact with S.D. when she was younger than
seventeen-years old.  Thus, the evidence is legally sufficient to convict
appellant of indecency with a child.

Accordingly, because the trial court committed reversible
error by admitting 

 

 

 








extraneous-offense
evidence, we reverse appellant=s conviction and remand
the case for a new trial.  

 

 

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and
Memorandum Opinion filed March 8, 2007.

Panel consists of Chief
Justice Hedges and Justices Yates and Seymore.

Publish C Tex. R. App. P. 47.2(b).









[1]  Prior to the testimony regarding both children,
appellant received a running objection under Texas Rule of Evidence 103(a)(1)
as to the extraneous offenses.  





[2]  Having found reversible error based on the trial
court=s admission of the extraneous offenses, we need not
address appellant=s due process argument in issue one.  





[3]  We need not address appellant=s factual sufficiency challenge in the second issue
and  remaining issues three and four because unlike his legal sufficiency challenge,
success on the other issues would not entitle appellant to acquittal instead of
remand, and thus resolving them is not Anecessary
to final disposition of the appeal.@  See
Tex. R. App. P. 47.1.