

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| FRANCISCO VALLES, | § | No. 08-18-00061-CR |
| Appellant, | § | Appeal from the |
| v. | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150D02069) |

## O P I N I O N

Appellant Francisco Valles was convicted of aggravated robbery. Appellant asked the complainant for spare change outside a grocery store. When the complainant failed to give him money, Appellant took the man's cane and beat him until he lost consciousness. Appellant now challenges the sufficiency of the evidence to support his conviction. He also complains that he did not receive a speedy trial. We affirm.

**Background**

Complainant Gilbert Urteaga is a lifelong El Paso resident and an Army veteran. He suffers from Crohn's disease and walks with a cane. One day he went to a grocery store to get a soft drink and candy, but he was blocked by a group of three people, including Appellant Francisco Valles.

While standing in front of the store, Appellant asked Urteaga for some change, in a threatening tone. Urteaga declined the request and tried to walk around him. Appellant then

approached quickly and pushed Urteaga hard on his shoulder. Urteaga tried to protect himself with his cane, but Appellant attacked, took the cane away, and then began to hit him with it. Appellant hit Urteaga on his head, throat, and chest. Appellant also hit Urteaga with his fist and kicked him. During the attack Appellant reiterated his request for change, while Urteaga kept telling him "no." Eventually Urteaga passed out.

Urteaga regained consciousness at the hospital. Asked at trial whether he remembered telling a law-enforcement officer that he felt "one of the offenders reaching into your pockets and trying to get your wallet or cell phone," Urteaga testified: "They were trying to get some change, I think." When asked further whether he remembered telling a law enforcement officer at the hospital that he felt "somebody reaching into [his] pockets when [he was] getting beaten," Urteaga said: "[a]t this moment I cannot recall."

The trial judge denied Appellant's motion for a directed verdict, and the jury rendered a guilty verdict on the charge of aggravated robbery. The trial court entered a judgment of conviction, and this appeal ensued.

## Analysis

Appellant challenges the sufficiency of the evidence to support his conviction for aggravated robbery. He also complains that he was prejudiced by delays in bringing his case to trial.

### I. Sufficiency of the evidence

Appellant contends that the evidence was insufficient to support his conviction for aggravated robbery. A criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787 (1979); *Adames v. State*, 353 S.W.3d 854, 859

2

(Tex.Crim.App. 2011). A court evaluating whether this standard has been met reviews all of the evidence in the light most favorable to the verdict to decide whether a rational trier of fact could have made that finding as to each essential element of the crime. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Brooks v. State*, 323 S.W.3d 893, 902 (Tex.Crim.App. 2010). The jury is the sole judge of witness credibility and of the weight given to any evidence presented, whether it be direct or circumstantial. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex.Crim.App. 2012). Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that determination. *Merritt*, 368 S.W.3d at 525–26.

A person commits *theft* if "he unlawfully appropriates property with intent to deprive the owner of property." TEX.PENAL CODE ANN. § 31.03(a). A person commits the offense of *robbery* if "in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id*. § 29.02(a). For this purpose, "'[i]n the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id*. § 29.01(1). Finally, among other ways of committing the offense at issue in this appeal, a person commits *aggravated robbery* if he commits robbery and "causes serious bodily injury to another" or "uses or exhibits a deadly weapon." *Id*. § 29.03(a).

Appellant's challenge to the sufficiency of the evidence is that there is no evidence that he committed or attempted to commit theft. With respect to complainant's property, Appellant contends that he merely asked for change—albeit paired with a threat of bodily injury. Urteaga did

3

not specifically testify that Appellant tried to take his money, but instead said he thought one of the "offenders" reached into his pockets and tried to get his wallet or cell phone. Appellant emphasizes that Urteaga could not recall telling a law enforcement officer at the hospital that he felt "somebody reaching into [his] pockets when [he was] getting beaten." Based on this evidence, Appellant contends that the complainant "did not remember the occurrence of any type of theft."

In response, the State argues that proof of a completed theft is not required, nor is a verbal demand for money or property. Instead, the State contends that the relevant question is whether the act was committed with intent to obtain or maintain control of property.

We must defer to the jury's evaluation of the evidence. Courts have found sufficient evidence of an attempt to commit theft when, as in this case, a demand for money was followed by a physical assault. *See, e.g.*, *Crawford v. State*, 889 S.W.2d 582, 584 (Tex.App.—Houston [14th Dist.] 1994, no pet.)(sufficient evidence of intent to steal reasonably could be inferred when appellant demanded money, complainant refused, and appellant proceeded to beat complainant); *Maldonado v. State*, No. 04-12-00145-CR, 2013 WL 2368277, at \*3 (Tex.App.—San Antonio May 29, 2013, no pet.)(mem. op., not designated for publication)("when an assault is coupled with a demand for money, a jury may reasonably conclude the assault occurred in an attempt to commit theft"). In this case, there was evidence that Appellant asked for change, and the complainant characterized the tone of the request as being "[l]ike a threat." Appellant blocked the complainant's passage before administering a physical beating. Appellant did not testify that he did not remember any theft—he specifically testified he did not remember *telling an officer* that he felt somebody reaching into his pockets. And while the evidence on the point was somewhat vague, the jury nevertheless reasonably could have concluded that the complainant did effectively

4

testify that his memory of the event was that either Appellant or one of his companions reached into his pockets and tried to get some change.

Based on the cumulative direct and circumstantial evidence of Appellant's intent, a rational trier of fact could conclude that he committed the offense "[i]n the course of committing theft" as defined by the statute, i.e., in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *See* TEX.PENAL CODE ANN. § 29.01(1). Accordingly, we overrule the challenge to the sufficiency of the evidence to support the conviction.

## II.      Right to speedy trial

The Sixth and Fourteenth Amendments to the Constitution guarantee that a person accused of a crime is entitled to a speedy trial, and the sole remedy for the deprivation of this right is dismissal. *See Barker v. Wingo*, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188 (1972); *Hopper v. State*, 520 S.W.3d 915, 923 (Tex.Crim.App. 2017).

A substantial amount of the procedural history relied upon by Appellant in presenting this issue is based upon his pro se submissions to the trial court while he was simultaneously represented by counsel.[1] However, criminal defendants generally are not entitled to "hybrid representation" (i.e. "representation partly by counsel and partly by self"), and accordingly the trial court was free to disregard Appellant's pro se submissions while represented by counsel.[2] Our analysis of this issue therefore cannot take account of any of Appellant's pro se submissions as a

---

[1] *See Barker*, 407 U.S. at 528, 92 S.Ct. at 2191 ("the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right").

[2] *See Robinson v. State*, 240 S.W.3d 919, 921-22 (Tex.Crim.App. 2007)("a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel," though "once a trial court actually rules on a *pro se* (or any) motion," that decision is subject to review on appeal). *Cf. United States v. Lopez*, 313 Fed.Appx. 730, 731 (5th Cir. 2009)(federal district court properly disregarded pro se motion to dismiss pursuant to Speedy Trial Act filed by criminal defendant represented by counsel at the time the motion was filed).

5

demonstration of his assertion of the right to a speedy trial, considering that no pro se motions were ever set for a hearing,[3] nor were they ruled upon or otherwise acted upon by the court in any way until Appellant's request for a speedy trial was expressly *granted* less than a week after it was brought to the judge's attention. Nevertheless, we still must consider the substance of Appellant's pro se submissions, which do appear in the appellate record, to the extent the State relies upon them to suggest reasons for the delay of Appellant's trial.

Appellant was arrested on April 6, 2015. The next day he requested and received appointed counsel. Three weeks later, Appellant was indicted on a charge of aggravated robbery. By the end of May, Appellant's case had been set for a jury trial on November 6, 2015. However, Appellant quickly registered his dissatisfaction with the performance of his lawyer, Francisco J. Guzman. Among other allegations, in a June 16, 2016 letter Appellant asserted that Guzman was not "doing his job," he had not "conducted initial interviews" of Appellant, he had not "set a bond hearing," and there was "a strong lack of communication." The letter identified another lawyer who Appellant preferred to be appointed to handle his defense. The June 16 letter accompanied a pro se "Motion for Withdrawal of Counsel and Appointment of New Counsel." This motion, like all subsequent pro se motions, was never set for a hearing. Appellant wrote to the court again with similar complaints on July 23 (including the assertion that Guzman "hasn't filed motion for a Speedy as I'm entitled to by law & asked to do so"), and he again attached a copy of the same pro

---

[3] Apart from the problem of Appellant's attempt at unauthorized hybrid representation, his pro se submissions suffered from the additional procedural hurdle that the record does not reflect that he effectively made the trial judge aware of any objection to trial delays by calling the judge's attention to the matter in open court, or by some direct communication of record. *See Dowler v. State*, 777 S.W.2d 444, 448 (Tex.App.—El Paso 1989, pet. ref'd); *see also Guevara v. State*, 985 S.W.2d 590, 592 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). *Cf.* Tex.R.App.P. 33.1(a) (to preserve error for appellate review, the record must show that the complaint was made by a timely request, objection, or motion, and that a ruling was obtained).

se motion. He re-submitted his pro se motion for appointment of new counsel and two letters inquiring about its status in September 2015.

In October 2015, the trial court appointed Jose Montes, Jr. as the new lawyer for Appellant. (The record suggests that Guzman withdrew because Appellant filed a grievance against him.) In the same order, the court also confirmed the original November 6, 2015 trial setting. But when the date of that initial trial setting arrived, Appellant's jury trial was reset for March 11, 2016, without any explanation on the record. The order was signed by both Appellant and his trial counsel, with no indication of any objection.

The following week, on November 12, 2015, Appellant's counsel filed a motion for speedy trial, reciting that trial was not held on the originally scheduled date, and that trial had been reset four months later. The motion asserted that Appellant would be prejudiced if trial was not held on or before December 1, 2015, for the reason that his witnesses "may not be available for Trial on March 11, 2016." In the ensuing week, defense counsel filed numerous pretrial motions, including various motions in limine, as well as motions to require production of some evidence and to suppress other evidence.[4]

---

[4] The written pretrial motions were: "Motion to Suppress Statements" (relating to statements by Appellant to law enforcement officers); "Motion in Limine" (relating to prior convictions and extraneous offenses); "Motion to Suppress" (relating to, among other things, intercepted communications and tangible evidence); "Motion for Production of Evidence Favorable to the Accused;" "Motion to Prohibit State from Attempting to Introduce Written Statements or Reports from State Witnesses;" "Motion for Production of Witness Statements and Writings Used to Refresh the Recollection of Witnesses;" "Motion to Limit State's Jury Argument" (relating to, among other things, references to community expectations, personal opinions and vouching for the credibility of witnesses or the State's case, improper references to Appellant, failure of Appellant to testify, improper reasons to convict, facts not in evidence, criticism of defense counsel, court proceedings, and arguing the law in a manner contrary to the court's charge); "Motion to Limit State's Argument" (relating to various additional types of "prohibited argument;" "Motion in Limine" (addressing, among other things, "evidence offered by the State to establish that the race or ethnicity of [Appellant] makes it likely that he will engage in future criminal conduct"); "Motion in Limine Concerning Speaking Objections and Sidebar Remarks;" "Motion Invoking 'The Rule;'" "Motion to Instruct State's Attorney to Refrain from Racial Discrimination in the Exercise of Peremptory Strikes;" "Motion for Discovery" (relating to witnesses, statements, "warrants and waivers," "law enforcement and investigation," "tests, reports and scientific evidence," and "state evidence"); "Motion to Have Official Court Reporter Make a Full Record;" "Motion for Discovery of the Arrest and Conviction Records of State's Witnesses;" "Motion for Discovery of Punishment Evidence;" "Motion for

In mid-December 2015, Appellant's case was set for a status conference, resulting in the rescheduling of trial on an earlier date, January 29, 2016. But the case did not go to trial then; the record reveals no reason for the delay, and the State suggests it was because of conflict between Appellant and Montes, his second appointed lawyer. In any event, the court set a bond hearing for February 4, 2016, and on that date the bond hearing was reset for a week later, February 11. At the same time, Appellant filed his first pro se motion to replace Montes, seeking the appointment of yet another lawyer. Nevertheless, Montes secured Appellant's release on bail, and the trial was rescheduled to June 3, 2016.

After Appellant's release from jail, the trial was repeatedly pushed back during the second half of 2016. On June 3 it was rescheduled for July 15. The trial was rescheduled again for October 7, but Appellant failed to appear. The trial court ordered a forfeiture of Appellant's bail bond, increased the amount of bail, and issued a capias for his arrest. Appellant was jailed again, and a jury trial was scheduled for December 16. On December 16, the trial was rescheduled for January 27, 2017.

More delay ensued over the course of 2017. On January 27, trial was rescheduled for April 21. Before that trial setting could be reached, Appellant filed a new pro se motion to replace his defense counsel. On April 21, trial was rescheduled for June 2. Appellant proceeded to submit pro se correspondence with copies of his motions to replace his appointed counsel in June, July, and August 2017. Trial was subsequently rescheduled for March 2018.

In February 2018, with his now long-delayed trial date approaching, Appellant wrote pro se letters to the court coordinator, referencing his history of trying to replace his trial counsel and

Production of Writings and Statements" (relating to writings and statements used to refresh the memory of a witness or for cross-examination); "Motion for Voir Dire of Expert Witness;" "Motion for Witness List;" "Motion for Discovery of Exculpatory and Mitigating Evidence;" and "Motion to Inspect, Examine and Test Physical Evidence."

enclosing another copy of his pro se motion. Then, during a pretrial conference on March 16, 2018, defense counsel presented a motion to withdraw, and he explained the history of his unsuccessful attempts to effectively communicate with Appellant about plea negotiations. The motion to withdraw was overruled. The trial court noted that Appellant wanted a speedy trial and was getting a speedy trial, further stating: "[a]ny differences between both of you, I would suggest need to be worked out" by trial. Appellant responded by stating that Montes "has given me the impression and very clear that he's very upset at the fact that I reported him to the State Bar and then went on further up . . . I strongly feel that he's very upset to where I strongly feel that he's not going to properly represent me." The trial court explained that Appellant's alternative options were to "get a lawyer that's ready to go to trial" or to prepare to represent himself. Appellant then changed the subject to "the speedy trial issue," saying that he "asked for it since 2015," and he did not know "why or what was going on between then and now." The judge stated: "You made it public to me on the record less than a week ago. . . . It's been granted. I don't know what you're arguing with me about." The judge later observed: "my thing is this, at some point when you have some kind of pattern like that, regardless of saying you want a speedy trial, it tells me you're trying not to go to trial." He reiterated to Appellant: "Your request for speedy trial has been granted."

The jury trial began on March 20, 2018, and two days later the jury returned its verdict. By this time, nearly three years had passed since Appellant was initially arrested on April 6, 2015.

Appellant now complains on appeal that he did not receive a speedy trial. A determination of whether a defendant has been deprived of this right requires the weighing and balancing of four factors: "1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Hopper*, 520 S.W.3d at 924; *Cantu v.*

9

*State*, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008). The State generally bears the burden of justifying the length of a delay between accusation and trial, while the defendant must prove the assertion of the right and show prejudice. *Cantu*, 253 S.W.3d at 280. The greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Id.* at 280–81. An appellant's "failure to diligently and vigorously seek a rapid resolution [to the prosecution] is entitled to 'strong evidentiary weight.'" *Id.* at 284 (quoting *Barker*, 407 U.S. at 531-32, 92 S.Ct. at 2192-93). "Delay caused by the defense weighs against the defendant," *Hopper*, 520 S.W.3d at 924, and delays attributable to actions by defense counsel are not a deprivation of the right to a speedy trial. *See Prescott v. State*, 123 S.W.3d 506, 516 (Tex.App.—San Antonio 2003, no pet.); *see also Vermont v. Brillon*, 556 U.S. 81, 90–91, 129 S.Ct. 1283, 1290–91 (2009). We review a trial court's ruling on a claim of a denial of the right to a speedy trial under a bifurcated standard: we review the trial court's factual determinations for abuse of discretion, and its legal determinations de novo. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App. 2002).

### a. Length of the delay

The length of the delay acts as a "triggering mechanism" that precludes further review unless the delay is presumptively prejudicial. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. The length of the delay that will provoke a speedy trial inquiry is "necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530–31, 92 S.Ct. at 2192. So long as the delay is more than "ordinary" it is subject to the speedy trial analysis, and the longer the delay, the greater the presumption of prejudice to the defendant. *Zamorano*, 84 S.W.3d at 649.

The relevant period for measuring the length of delay begins when a defendant is arrested or formally accused. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003)(citing *United*

10

*States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455 (1971)).  Appellant was arrested on April 6, 2015 and indicted on April 28, 2015.  His trial began nearly three years later, on March 20, 2018.  The State concedes that this delay was sufficient to trigger an analysis of the remaining factors relating to Appellant's right to a speedy trial.

### b.  Reasons for the delay

The State generally bears the burden of justifying the length of the delay in bringing a defendant to trial.  *Cantu*, 253 S.W.3d at 280.  A "deliberate attempt to delay the trial" is weighed heavily against the government, while a "more neutral reason such as negligence" is weighed less heavily.  *State v. Munoz*, 991 S.W.2d 818, 822 (Tex.Crim.App. 1999)(quoting *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192).  However, "delay which is attributable in whole or in part to the defendant" may constitute a waiver of a speedy trial claim.  *Id.*; *see also Webb v. State*, 36 S.W.3d 164, 173 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd).  A defendant's decision to remain a fugitive without asserting his right to a speedy trial weighs heavily against him.  *Lott v. State*, 951 S.W.2d 489, 495 (Tex.App.—El Paso 1997, pet. ref'd).  The inquiry is not whether one party is solely to blame, but rather "whether the government or the criminal defendant is more to blame for that delay."  *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 2690 (1992).

Appellant contends that the record reveals no reason why his trial setting was repeatedly reset.  To the extent the delay is attributable to "pure negligence of court congestion," he argues that factor must be "weigh[ed] against the State."  And although he missed a trial setting while free on bail, he contends this only caused a delay of two weeks until he was arrested, in contrast to nearly three years of delay attributable to the State.

The State argues that Appellant failed to present any evidence to support his speedy-trial issue, and the record contains little that sheds light on why the trial was delayed for three years.

11

To the extent anything concerning this factor can be discerned from the record, the State contends that it shows Appellant bears responsibility for the delay because of his failure to set a hearing to demand a speedy trial, his constant conflicts with two different appointed lawyers, and his continuous attempts to get a different lawyer appointed to represent him. In particular, the State argues that the record shows that from the outset Appellant complained about his appointed counsel and asked for replacement counsel, that a new lawyer was appointed for Appellant, and that the second lawyer successfully got the trial moved to an earlier date and filed numerous pretrial motions in anticipation of trial. The State contends that the record reflects that the trial delays after that point were caused by "constant discord" between Appellant and his counsel, Appellant's failure to appear for the October 7, 2016 trial setting, and plea negotiations. Further, the State notes there is no argument or evidence that it deliberately delayed bringing the case to trial.

While it is fundamentally the State's responsibility to justify the delay in reaching a trial, nothing in the record suggests that the State's deliberate actions or negligence was the primary reason for delay in this case. In contrast, as argued by the State, the record documents Appellant's near-constant dissatisfaction with his appointed lawyers, and that characterization of the record is bolstered by the trial court's observation that the "pattern" of Appellant's behavior indicated that he was trying to avoid trial. Moreover, the trial judge granted Appellant's request to receive a speedy trial within a week of it being brought to the court's attention, over Appellant's request for new counsel and appointed counsel's request to withdraw. In sum, consideration of the reasons for delay weighs in favor of concluding, as the trial court implicitly did, that Appellant was more to blame. *See Doggett*, 505 U.S. at 651, 112 S.Ct. at 2690; *see also Webb*, 36 S.W.3d at 173 ("valid reasons for the delay" included issues arising from appellant's inability to get along with appointed defense counsel); *Johnson v. State*, No. 02-05-205-CR, 2006 WL 2578033, at *2

12

(Tex.App.—Fort Worth June 22, 2006, no pet.)(abatement order, not designated for publication)("Ongoing, good faith plea negotiations are a valid reason to delay a trial.").

### c. Assertion of the right

A defendant has no duty to bring himself to trial; that duty is incumbent on the State. *Cantu*, 253 S.W.3d at 282. A defendant's failure to assert his right is not "automatically fatal to a speedy-trial claim," but "a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Hopper*, 520 S.W.3d at 924 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2182). The assertion of the speedy-trial right, or his failure to assert it, is entitled to strong evidentiary weight in the speedy-trial analysis. *Cantu,* 253 S.W.3d at 283. A defendant's lack of a timely demand for a speedy trial "indicates strongly that he did not really want a speedy trial" and that he was not prejudiced by the lack of one. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003).

Appellant contends that he did all he could to assert his right to a speedy trial. He wrote a letter to the trial court in July 2015 saying he had directed his first attorney to file a motion for speedy trial, and in November 2015 his newly appointed second lawyer filed such a motion. He also wrote numerous letters asking for help, though he was continuously represented by counsel.

In response, the State observes that neither Appellant's counsel, nor Appellant while attempting to simultaneously represent himself, ever requested a hearing on a motion for a speedy trial. The State argues that Appellant was more interested in obtaining the appointment of his counsel of choice.

In *Barker v. Wingo*, which involved a five-year delay that the Supreme Court considered to present a close case, 407 U.S. at 533, 92 S.Ct. at 2193, the analysis of the speedy-trial issue placed the greatest weight on the observation that the accused "did not want a speedy trial." *Id*. at

13

534. "Counsel was appointed for Barker immediately after his indictment and represented him throughout the period," and no question was raised "as to the competency of such counsel." *Id*. The record strongly suggested that while Barker "hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried." *Id*. at 535. Similarly in this case, no issue has been presented to challenge the effectiveness of Appellant's trial counsel, and the record supports the trial court's observation that Appellant's pattern of filing complaints against his appointed counsel and continuously objecting to them indicated that he did not genuinely want a speedy trial—especially considering the additional fact that he failed to appear for a trial setting while free on bail.

### d. Prejudice caused by the delay

The fourth *Barker* factor requires consideration of whether and to what extent the delay has prejudiced the defendant. *Id*. at 532, 92 S.Ct. at 2193. We analyze prejudice based on the interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the accused's defense will be impaired. *Id*. The last of these factors is the most serious, as it can have a material effect on the fairness of the trial as a whole. *Id*. This Court has required appellants raising speedy-trial claims to make some prima facie showing of prejudice. *Wells v. State*, No. 08-05-00101-CR, 2006 WL 2843186, at *4 (Tex.App.—El Paso Oct. 5, 2006, no pet.)(not designated for publication)(citing *State v. Munoz*, 991 S.W.2d 818, 826 (Tex.Crim.App. 1999)). But "[i]f witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *see also Cantu*, 253 S.W.3d at 285. Moreover, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2693.

14

Appellant contends that he suffered significant prejudice because a witness to the incident had moved outside of subpoena range, and that witness had made a video recording that might have been exculpatory. In response, the State argues that to claim prejudice because of a missing witness, Appellant must show that: (1) the witness was unavailable at the time of trial; (2) her testimony would have been relevant and material; and (3) he exercised due diligence in an attempt to locate the witnesses. *Wells*, 2006 WL 2843186, at \*5 (citing *Swisher v. State*, 544 S.W.2d 379, 382 (Tex.Crim.App. 1976); *Burgett v. State*, 865 S.W.2d 594, 598 (Tex.App.—Fort Worth 1993, pet. ref'd)). By that standard, Appellant failed to demonstrate prejudice. The State also contends that Appellant has offered no argument or evidence that the witness or her video recording were material to the defense. The State finally notes the absence of support to draw any conclusion that the absence of the witness was attributable to the delay in bringing the case to trial.

Appellant presents no argument that he was prejudiced by oppressive pretrial incarceration or by pretrial anxiety and concern. Affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Doggett*, 505 U.S. at 655, 112 S.Ct. at 2692. While the State has not persuasively rebutted a presumption that some unprovable impairment to the defense inevitably resulted from a nearly three-year delay in bringing Appellant's case to trial, we nevertheless conclude that the other factors and circumstances surrounding this inquiry show that to the extent any unspecified prejudice could be presumed in this case, Appellant's pattern of objecting to and failing to fully cooperate with appointed counsel—not to mention his failure to appear for a trial setting while free on bail—effectively constitute acquiescence to the trial delays that preclude Appellant from prevailing on his speedy trial claim. *See Barker*, 407 U.S. at 534–36, 92 S.Ct. at 2194–95; *see also Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. We overrule the issue complaining that Appellant was deprived of a speedy trial.

15

## Conclusion

Having overruled Appellant's challenge to the sufficiency of the evidence and his objection to the speediness of his trial, we affirm the judgment of conviction.

January 17, 2020

MICHAEL MASSENGALE, Former Justice

Before Palafox, J., Barajas, C.J., (Senior Judge), and Massengale, J. (Former Justice)
Barajas, C.J., (Senior Judge)(Sitting by Assignment)
Massengale, J., (Former Justice)(Sitting by Assignment)

(Do Not Publish)